IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BROWN-EL, #201344, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:06-cv-1117-MEF |
| | ) | |
| KENNETH SCONYERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## SPECIAL REPORT

**COME NOW**, the defendants, **Governor Riley, Commissioner Allen, Gwendolyn Mosley, Brian Mitchell, Anthony Askew, Patricia Brantley, Linda Glenn, Kenneth Sconyers, and Stephanie Scott,** and in accordance with this Honorable Court's Order of January 29, 2007, do hereby submit the following Special Report.

## PARTIES

1.  The plaintiff, Edward Brown-El, AIS# 201344 (Mr. Brown-El), is an Alabama Department of Corrections (ADOC) prisoner, incarcerated in the Easterling Correctional Facility (Easterling) in Clio, Alabama.

2.  Plaintiff has named the following defendants:

    a. Governor Riley (Governor Riley), Governor of the State of Alabama.

b. Richard Allen (Commissioner Allen), Commissioner of the ADOC.

c. Gwendolyn Mosley (Warden Mosley), Correctional Warden III, who is employed by the ADOC at Easterling in Clio, Alabama.

d. Kenneth Sconyers (Captain Sconyers), Captain, who is employed by the ADOC at Easterling in Clio, Alabama.

e. Stephanie Scott (Counselor Scott), Drug Treatment Counselor, who is employed by the ADOC at Easterling in Clio, Alabama.

f. Brian Mitchell (Associate Mitchell), Psychological Associate II, who is employed by the ADOC at Easterling in Clio, Alabama.

g. Anthony Askew (Chaplain Askew), Correctional Chaplain, who is employed by the ADOC at Easterling in Clio, Alabama.

h. Patricia Brantley (Officer Brantley), Correctional Officer I, who is employed by the ADOC at Easterling in Clio, Alabama.

i. Linda Glenn (Officer Glenn), Correctional Officer I, who is employed by the ADOC at Easterling in Clio, Alabama.

## PLAINTIFF'S ALLEGATIONS AND DEMANDS

Plaintiff alleges that defendants Governor Riley, Commissioner Allen, Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, and Associate Sconyers acted in concert to violate his Eighth and Fourteenth Amendment rights by subjecting him to "overcrowding, lack of security, health hazard situation, imminent danger, and punitive segregation by housing [him] in a maximum security prison disguised as a level

IV." Plaintiff alleges that defendant Askew violated his First Amendment right to practice his religion by refusing to allow a volunteer from the Moorish Science Temple Muslims to come into the prison to bring food for Mr. Brown-El's religious gatherings.

Plaintiff alleges that defendants, Officer Brantley Officer Glenn and Captain Sconyers violated his due process rights by failing to follow ADOC procedures for holding disciplinary hearings. Specifically, Mr. Brown-El alleges that he was found guilty of Indecent Exposure/Exhibition based on hearsay testimony with no other evidence to support the finding.

Finally, plaintiff alleges,

> "Defendant Scott fail to follow crime bill SAP criteria to treat inmates for substance abuse of drugs but instead implement punishment on the punitive basis with inmates over inmates writing rule violations which undermine security.
> Defendant Scott fail to follow proper treatment guidelines of crime bill SAP that does not place ill inmates under the hands and authority of other inmates to extort the weaker inmates to be tricked out of their store goods to avoid criminals under the disguise of peace keepers or sit hours on a hard surfaced bench that cut off blood circulation, etc. Defendant Scott being a former security officer has brought punishment to crime bill instead of treatment coupled with arbitrary harassment in violation of plaintiff's 8th and 14th amendment rights.

[Court Doc. No. 1.] (spelling and grammar unchanged)

Plaintiff asks for relief in the form of injunctive relief and two million dollars ($2,000,000) in monetary damages.[1]

## DEFENDANTS' EXHIBITS

1.    Exhibit "A" - Affidavit of Warden Mosley.

---

[1] Mr. Brown-El does not specify the injunctive relief he seeks.

2.    Exhibit "B" – Affidavit of Captain Sconyers.

3.    Exhibit "C" –. Affidavit of Officer Brantley.

4.    Exhibit "D" –. Affidavit of Officer Glenn.

5.    Exhibit "E" – Affidavit of Chaplain Askew.

6.    Exhibit "F" – Affidavit of Counselor Scott.

7.    Exhibit "G" – Affidavit of Associate Mitchell.

8.    Exhibit "H" – ADOC Admin. Reg. No. 333, "Religious Program Services."

9.    Exhibit "I" – ADOC Admin. Reg. No. 403, "Disciplinary Hearing Procedures for Major Rule Violations."

## DEFENDANTS' RESPONSE

1.    It is in Easterling's penological interest to screen volunteers who bring food into the prison for purposes of religious celebration.

2.    Plaintiff lacks standing to bring this suit.

3.    This Court lacks jurisdiction.

4.    Plaintiff has failed to allege facts sufficient to support a restriction of freedom to exercise religion claim.

5.    Defendants named in their official capacities are immune by virtue of sovereign immunity.

6.    Defendants named in their individual capacities are immune by virtue of qualified immunity.

7.    Defendants deny violating plaintiff's constitutional rights.

8.    Plaintiff has failed to state a claim upon which relief can be granted.

9.    Defendants generally deny that the plaintiff is entitled to receive any portion of the relief requested in the Complaint filed in this action.

10.    Plaintiff is generally not entitled to punitive damages in connection with any claims against any of the defendants.

11.    To the extent that any of the foregoing allegations in plaintiff's Complaint have not been admitted or denied, they are hereby denied.

12.    Defendants plead the general issue.

13.    Defendants plead injury by a fellow servant.

14.    The defendants reserve the right to assert additional defenses as discovery progresses.

15.    The defendants reserve the right to assert additional defenses if the Court determines that plaintiff stated a claim in ground three of his Complaint.

16.    Defendants request, pursuant to Fed. R. Civ. P. 12(c), that this Court consider this Special Report as a Motion for Summary Judgment as both parties have submitted affidavits in support of their positions and there are no material factual disputes.

## STATEMENT OF UNDISPUTED FACTS

Mr. Brown-El is an inmate housed in Easterling, a medium custody Level IV institution. (Ex. A.) Inmates that are classified as close or maximum custody are sometimes temporarily assigned to Easterling, and are confined to a one-man cell and do not come into contact with other inmates. (Ex. A.)

One thousand two-hundred and sixty nine (1,269) inmates are assigned to Easterling. (Ex. A.) Easterling has the capacity to hold one thousand two-hundred and seventeen (1,217) inmates. (http://www.doc.state.al.us/facility.asp?id=6, ADOC Easterling page.) Easterling is currently understaffed, but officers assigned to Easterling work overtime to maintain staff requirements. (Ex. A.) Mr. Brown-El has not suffered any specific injuries relating to overcrowded conditions or lack of security at Easterling. [Court Doc. No. 1.]

Easterling has a program that allows members of the public to bring in food to inmates for the purposes of celebrating religious holidays. (Ex. E.) Public volunteers must qualify to participate in the program. (Ex. E.) No members of the Moorish Science Temple Muslims have attempted to qualify as a volunteer in the program over the last ten years.(Ex. E.)

On June 19, 2006, Officer Brantley saw Mr. Brown El behind the kitchen unit from an observatory tower.[2] (Ex. A-D.) Officer Brantley initiated a disciplinary action against Mr. Brown El for Indecent Exposure/Exhibition. (Ex. A-D.) Mr. Brown El was given proper notice of

---

[2] Mr. Brown El denies that he was masturbating behind the kitchen. [Court Doc. No. 1.]

the hearing and was allowed to submit questions to each of the ADOC's witnesses. (Ex. A-D.) At the conclusion of the hearing, Mr. Brown El was found guilty of Indecent Exposure/Exhibition. (Ex. A-D.) The hearing Officer, Officer Glen, recommended that Mr. Brown El loose his privileges for the violation. (Ex. A-D.)

During his incarceration at Easterling, Mr. Brown El received treatment for substance abuse. (Ex. F and G.) Mr. Brown El has not been placed in the Omnibus Crime Bill Substance Abuse Program. (Ex. F.)

## DISCUSSION OF PLAINTIFF'S CLAIMS

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). Once the movant has established that there is no genuine issue, then the burden shifts to the non-movant to rebut the movant's prima facie showing. Celotex Corp. v. Catrett, 477 U.S. 323 (1986). Unless the non-movant can submit substantial evidence that a genuine issue of material fact does exist, the movant is entitled to summary judgment. Id. This case is ripe for summary judgment because the plaintiff cannot present substantial evidence that there is a genuine issue of material fact as to any of his claims and the defendants are entitled to judgment as a matter of law.

## I. Sovereign Immunity

A.    Mr. Brown-El's claims seeking monetary damages against the defendants, Governor Riley, Commissioner Allen, Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott, and Captain Sconyers, in their official capacities are without merit.

Mr. Brown-El's claims seeking monetary damages against the defendants, Governor Riley, Commissioner Allen, Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott, and Captain Sconyers, in their official capacities fail because the defendants are entitled to immunity via the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens.  See Edelman v. Jordan, 415 U.S. at 663, 94 S. Ct at 1347 and Hans v. Louisiana, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890).  The defendants were acting within the scope of their official duties in this instance on behalf of the State of Alabama. Therefore, Plaintiff brings suit against the State of Alabama.  The State of Alabama has not waived its immunity or consented to the filing of such a

suit. Defendants in their official capacities are absolutely immune from suit in this instance. U.S. Const. amend. 11; Art. I, § 14, Ala. Const. (The State of Alabama shall never be made a defendant in any court of law or equity); see also <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (a claim against a state official in his official capacity is a claim against the state). All claims against the defendants, Governor Riley, Commissioner Allen, Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott and Captain Sconyers in their official capacities are due to be dismissed.

B.    <u>Mr. Brown-El's claims for injunctive relief against defendants Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott, and Captain Sconyers, for injunctive relief based on prison overcrowded conditions are without merit.</u>

Plaintiff's claims for injunctive relief against defendants Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott, and Captain Sconyers, for injunctive relief based on prison overcrowded conditions are without merit. Neither Warden Mosley, Captain Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scoot, or Associate Sconyers, have any control over the number of inmates housed at Easterling. (Ex. A-J.)

C.    Mr. Brown-El's claims for injunctive relief against Governor Riley and Richard Allen as they relate to overcrowding are without merit because plaintiff failed to allege any particular injury to establish standing.

Defendants, Governor Riley and Commissioner Allen have raised the issues of lack of standing, hence jurisdiction, as well as failure to state a claim upon which relief can be granted.  The Plaintiff lacks standing and therefore this Honorable Court lacks jurisdiction.  Without standing, the Plaintiff fails to state a claim upon which relief can be granted.  Standing is essential to jurisdiction.  "[A] litigant may only assert his own constitutional rights or immunities." McGowan v. Maryland, 366 U. S. 420, 429 (1961), citing United States v. Raines, 362 U.S. 17, 22 (1961).  The essence of a standing question is whether the Plaintiff has alleged "a personal state in the controversy." Harris v. McRae, 448 U. S. 297, 320 (1981).  The Plaintiff must assert "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for the illumination of difficult constitutional questions." Harris v. Evans, 20 F. 3d 1118, 1121 (11th Cir. 1994) citing Saladin v. City of Milledgeville, 812 F. 2d 687, 690 (11th Cir. 1987)(internal citations omitted).

The Plaintiff did not set forth in his complaint any demonstrable, particularized injury to him. [Court Doc. No. 1.] Mr. Brown El's complaint does not date, describe or otherwise pinpoint any act, omission, or breach of duty which has resulted in any specific injury, whether actual or threatened, to him.  The Plaintiff's standing or "personal stake" in this controversy rests entirely upon the implication that his custodial confinement at

Easterling necessarily means that his constitutional rights to be free of cruel and unusual punishment were violated. This does not suffice to establish standing.

The threshold showing for standing must demonstrate, as an "irreducible constitutional minimum, (1) that the plaintiff has suffered an injury in fact, (2) that the injury is fairly traceable to the actions of the defendant, and (3) that the injury will likely be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992); Miccosukee Tribe of Indians of Florida v. Florida State Athletic Commission, 226 F.3d 1226 (11th Cir. 2006); Harris v. Evans, 20 F. 3d 118, 1121 (11th Cir. 1994). An "injury in fact" requires an invasion of a legally protected interest which is both concrete and particularized as well as actual or imminent, not conjectural or hypothetical. See Miccosukee Tribe of Indians of Florida, 226 F. 3d 1226 at 1229; E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1996). Plaintiff failed to include in his Complaint particularized facts concerning a threatened or actual injury sufficient establish standing to assert his rights or the rights of others. Therefore, this court lacks jurisdiction and the Plaintiff's action is due to be dismissed.

## II. Qualified Immunity

### A. Due Process Claim

Mr. Brown-El's claims against defendants, Warden Mosley, Captain Mitchell, Officer Brantley and Officer Glenn, in their individual capacities, fail based on qualified immunity, which "protects government officials from civil trials and liability when their conduct in performing discretionary functions 'violates no clearly established statutory or

constitutional rights of which a reasonable person would have known.'" Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting Lassiter v. Alabama A&M Univ., Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994). Disciplining inmates is a dangerous undertaking that requires the use of discretion. Therefore, plaintiff must allege a valid violation of his constitutional rights that a named defendant was on notice that his actions violated clearly established law.

Where a prison's practice or policy is reasonably related to a legitimate penological interest, the policy will be upheld as a valid restriction of a prisoner's constitutional rights as a matter of law. Pierce v. Smith 347 F.Supp.2d 1143, 1155 (M.D. Ala. 2004). Factors used to determine the reasonableness of the penological interest are:

> (a) whether a valid rational connection exists between the policy and the legitimate government interest; (b) whether an alternative means of exercising the constitutional right is available to the prisoner in spite of the policy; (c) whether, and the extent to which, accommodation of the asserted right will have an impact on other inmates, prison staff, or other prison resources in general; and (d) whether the regulation represents an "exaggerated response" to prison concerns.

Id.

Mr. Brown-El's claim that defendants knowingly violated his due process rights fails because he did not lose a protected liberty interest. Mr. Brown-El alleges defendants Warden Mosley, Captain Mitchell, Officer Brantley, and Officer Glenn violated his due process rights by taking away his institutional privileges and assigning him to forty-five

(45) days of disciplinary custody. Mr. Brown El lost his institutional privileges after he was found guilty of Indecent Exposure/Exhibition. (Ex. A-D.) Mr. Brown El was placed in disciplinary segregation so that he could easily be distinguished from other inmates that enjoyed institutional privileges. (Ex. A and B.) Captain Sconyers explains that in his experience, intermingling inmates with privileges amongst inmates without privileges causes an increase in theft and fighting amongst inmates. (Ex. B.) Moreover, the Supreme Court has held that the transfer of an inmate from general population to administrative confinement violates no constitutionally based liberty interest. Hewitt v. Helms, 459 U.S. 460, (1983). Mr. Brown-El has failed to state a claim against Warden Mosley, Captain Mitchell, Officer Brantley, and Officer Glenn regardless of how the disciplinary hearing was held.

**B. First Amendment Claim**

Mr. Brown-El has failed to plead facts or circumstances that would give rise to a deprivation of religious rights claim. Where a prison's practice or policy is reasonably related to a legitimate penological interest, the policy will be upheld as a valid restriction of a prisoner's constitutional rights as a matter of law. Pierce, 347 F.Supp.2d 1143, 1155. Chaplain Askew states in his Affidavit that at all times relevant to this matter, Easterling operated in accordance to ADOC Regulations as they relate to visitation and religious practice. (Ex. E.) Mr. Brown-El complains that this First Amendment right to practice his religion has

- 13 -

been violated because members of the Moorish Science Temple Community are not allowed to bring in food for religious celebrations. [Court Doc. No. 1.] ADOC Admin Reg. No. 333, "Religious Program Services," provides:

> "An 'approved free-world sponsor(s)' will be responsible for submitting a dinner menu to the Chaplin at least 20 days prior to the date of the celebration. The free-world sponsor(s) must plan the dinner menu to accommodate the number of inmates attending the religious celebration. The Warden shall review and approve the dinner menu. If an approved free-world sponsor cannot be found, the inmates shall be fed from the regular dinner menu."

Mr. Brown-El has failed to allege that anyone from the Moorish Science Temple Community has attempted to get approval to become a free-world sponsor for Mr. Brown El's religious celebration. Chaplain Askew states in his Affidavit that no one from the Moorish Science Temple Community has applied to Easterling to become a religious volunteer for the Moorish Science Temple Community in the past ten (10) years. (Ex. E.) Easterling has a penological interest in pre-screening volunteers that seek to bring food to the prisoners for the purpose of celebrating religious holidays. Easterling's penological interest in this instance is security. Mr. Brown-El's First Amendment claim fails, and is due to be dismissed.

**C. "Crime Bill" SAP Claim**

Defendants, Counselor Scott and Associate Mitchell explain in their Affidavits that Mr. Brown-El has never been assigned to the Omnibus Crime Bill Substance Abuse Program, but he has received other

treatment for substance abuse. (Ex. F and G.) Mr. Brown-El has failed to state a claim against defendants Counselor Scott and Associate Mitchell and they are due to be granted summary judgment.

Summary judgment is proper if the pleadings, affidavits and documents submitted to the court show that there is no genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-250 (1986). This case is ripe for summary judgment because there is no genuine issue of fact as to the plaintiff's claims and the defendants are entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendants, Governor Riley, Commissioner Allen, Warden Mosley, Associate Mitchell, Officer Brantley, Officer Glenn, Chaplain Askew, Counselor Scott, and Captain Sconyers respectfully request that this Honorable Court consider treating this Special Report as a Motion for Summary Judgment, and enter judgment in favor of the defendants.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL
KING047


s/ *J. Matt Bledsoe*_____
J. Matt Bledsoe (BLE 006)
ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7443
(334) 242-2433 (fax)

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that I have, this the12th day of March, 2007, served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

     Mr. Edward Brown-El, #201344
     Easterling Correctional Facility
     PO Box 10
     Clio, AL  36017

                       s/ *J. Matt Bledsoe*_____
                       J. Matt Bledsoe (BLE 006)
                       ASSISTANT ATTORNEY GENERAL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344          )
    Plaintiff,                              )
                                                  )
    VS.                                          )
                                                  )    CASE NO. 2:06-CV-1117-MEF
                                                  )
KENNETH SCONYERS, CAPTAIN, et.al.  )
    Defendant (s)                           )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Gwendolyn Mosley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Gwendolyn Mosley, and I am presently employed as Warden III, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate Edward Brown, #210344, was assigned to Easterling Correctional Facility on June 30, 2004.

On June 19, 2006, Inmate Brown was placed into Dorm 6A (Restricted Privilege Dorm) pending investigation and disciplinary action for violation of rule #38-Indecent Exposure/Exhibitionism. The Tower Officer Patricia Brantley observed Inmate Brown in the act of masturbating while outside the kitchen.

On July 3, 2006, a disciplinary hearing was held on Inmate Brown and Inmate Brown was found guilty for his charge. On July 5, 2006, Captain Kenneth Sconyers reviewed the disciplinary action that was initiated against Inmate Brown and approved the Hearing Officer's recommendation that Inmate Brown receive confinement to disciplinary segregation and loss of privileges for a period of 45 days as punishment (Exhibit #1).

Our Facility is a medium custody, Level IV Institution. Close or maximum custody inmates are assigned to our institution, only as temporary assignment. Close or maximum custody are confined to a one-man cell and are prevented from physical contact with other inmates.



EXHIBIT
A

Affidavit – Gwendolyn Mosley
Civil Action – 2:06-CV-1117-MEF
Page 2

Inmate Brown allegation that Dormitory 6A is a Segregation Unit is untrue. The Restricted Privilege Dorm (6A) has no single cells. It is an open bay dormitory design, as are all our population dorms. The Restricted Privilege Dorm serves as a management tool that enables us to group inmates who have lost their privileges and to isolate them from those inmates who still maintain their privileges.

At the present time, Easterling Correctional Facility has approximately 1269 inmates assigned. All ADOC Facilities are over the required limit of inmates. ADOC is understaffed with correctional officers, and Easterling is not fully staffed at the present time, but we have officers to work overtime to fill in the areas that are needed.

I have not violated Inmate Brown's Constitutional Rights.

GWENDOLYN MOSLEY

SWORN TO AND SUBSCRIBED TO before me this the ___9th___ day of
___February___, 2007.

NOTARY PUBLIC

My Commission Expires: ___7-15-07___

**EXHIBIT 1**

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

ALDOC Form 225B
DISC.#06-432

ENTERED JUL 0 1 2006

ECF-05-

1. INMATE: **Edward Brown**    CUSTODY: **Medium**    AIS NO.: **B/201344**

2. FACILITY:

3. The above named inmate is being charged by **Officer Patricia Brantley** with violation of rule **#38** specifically **Indecent Exposure** from regulation # **403**, which occurred on or about **June 19, 2006** at (time) **approximately 5:40** (am / **pm**), Location: **Behind kitchen**   A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows:
**You, Inmate Edward Brown, B/201344, were observed by Officer Patricia Brantley stroking your exposed, erect penis in a backward and forward motion while looking directly at Officer Brantley behind the kitchen.**

5. Date: _19 June 2006_    _Patricia Brantley, COI_
   Arresting Officer / Signature / Rank
   **Officer Patricia Brantley**

6. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _19th_ day of _June_, 2006, at (time) _9:15_ (am/**pm**).

7. _Rodney Wilson COI_    _Refused to sign  Rodney Wilson COI_
   Serving Officer / Signature / Rank    Inmate's Signature / AIS Number

8. Witnesses desired?  **NO** _____    **YES** _Edward Brown_
   Inmate's Signature    Inmate's Signature

9. If yes, list: _Officer M. Jordan, Steward Johnson_

10. Hearing Date _7-3-06_    Time _3:30 p.m._    Place _Segregation Lobby Office_

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate (is / **is not**) capable of representing himself.
    _Nola Glen CHO_
    Signature / Hearing Officer

13. Plea: _Edward Brown #201344_ Not Guilty _____ Guilty

14. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _Nola Glen CHO_
    Signature / Hearing Officer

15. Arresting Officer's testimony (at the hearing): **On the above date and time, I was Tower Officer. At approximately 5:40 PM, I observed Inmate Edward Brown, sitting at the back of the Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking directly at me in the Tower.**

Annex C to AR 403 ( Page 1 of 3 pages )

AR 403 January 30, 2003

16. Inmate's Testimony: __On t. nineteenth of July, I took the op barrels outside. I__ __had some cookies and some juice, so I sat down outside to eat my cookies and drink my__ __juice in the back of the kitchen. The next thing I know, Steward Johnson came out back__ __and told me to come in, and she got my name and AIS number and gave it to Officer Brant-__ __ley. (See attached questions).__

Witness: _Matthew J Jadin CoI_   Substance of Testimony: __(See attached__ __questions).__

Witness: _Margret Johnson_   Substance of Testimony: __Mrs. Brantley called me__ __in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-__ __turbating on her. I went to the back door of the kitchen, and Inmate Edward Brown was__ __the XXXXXXXX inmate sitting out back facing theXXXXXXXXXXXXXXXXXXX Tower.__

17. The Inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

_Linda Glenn COI_
Signature / Hearing Officer.

18. The Following witnesses were not called    reason not called
    1. __N/A__    __N/A__
    2. _____    _____
    3. _____    _____

19. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
    The Hearing Officer finds that: __On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,__
    __Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-__
    __ward motion, while looking directly at Officer Brantley in the Tower. Therefore, Inmate__
    __Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.__

20. Basis for Finding of Fact: __Officer Patricia Brantley stated under oath that she observed__
    __Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,__
    __erect penis in a backward and forward motion, while looking directly at her in the Tower.__
    __Inmate Brown's statement was not believable. Witness Steward Johnson's testimony confirmed__

21. Hearing Officer's Decision:    __X__  Guilty    __charge.__
                                        Not Guilty

22. Recommendation of Hearing Officer: __Hearing officer recommends 45 days Disciplinary__
    __Segregation and 45 days loss of all privileges.__
    __*Not earning good time.__

_Linda Glenn_
Signature / Hearing Officer
__Linda Glenn, COI__
Typed Name and Title

23. Warden's Action – Date    _7-5-06_
    Approved    _Kenneth Slong CoSII_
    Disapproved    _____
    Other (specify)    _____

    Reason if more then 30 calendar days delay in    _____
    action.    _____

25. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
    Named inmate on this the ___7___ day of __JULY__ 2005, at (time) _12:30_ (am/ pm).

_Unr Fauy , COI_    _REFUSED TO SIGN D. Fauy, COI_
Signature / Serving Officer / Title    Inmate's Signature and AIS Number
                                       Annex C of AR 403 (page 2 of 3 pages)

16.  Inmate's Testimony:  On the nineteenth of July, I took the top barrels outside. I had some cookies and some juice, so I sat down outside to eat my cookies and drink my juice in the back of the kitchen. The next thing I know, Steward Johnson came out back and told me to come in, and she got my name and AIS number and gave it to Officer Brant-ley. (See attached questions).

Witness: _Matthew Paden CUI_    Substance of Testimony: (See attached questions).

Witness: _Margret Johnson_    Substance of Testimony: Mrs. Brantley called me in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-turbating on her. I went to the back door of the kitchen, and Inmate Edward Brown was the XXXXXXXX inmate sitting out back facing the XXXXXXXXXXXXXXXXXXX Tower.

17.  The Inmate was allowed to submit written question to all witnesses. Copy of questions and answers are attached.

_Signature / Hearing Officer_

18.  The Following witnesses were not called    -    reason not called
1.  N/A        N/A
2.  _____        _____
3.  _____        _____

19.  After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that :  On 06/19/06, at approximately 5:40 PM, Behind the Kitchen, Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-ward motion, while looking directly at Officer Brantley in the Tower. Therefore, Inmate Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.

20.  Basis for Finding of Fact:  Officer Patricia Brantley stated under oath that she observed Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking directly at her in the Tower. Inmate Brown's statement was not believable. Witness Steward Johnson's testimony confirmed

21.  Hearing Officer's Decision:    X    Guilty        charge.
Not Guilty

22.  Recommendation of Hearing Officer:  Hearing officer recommends 45 days Disciplinary Segregation and 45 days loss of all privileges.
*Not earning good time.

_Signature / Hearing Officer_
Linda Glenn, COI
Typed Name and Title

23.  Warden's Action – Date    7-5-06
Approved    _Kenneth Jones_ CoSII
Disapproved
Other (specify)

Reason if more then 30 calendar days delay in action.

25.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above. Named inmate on this the ___7___ day of _JULY_ 2006, at (time) _12:20_ (am/pm).

_Signature / Serving Officer / Title_    COI    REFUSED TO SIGN    Inmate's Signature and AIS Number
Annex C of AR 403 (page 2 of 3 pages)

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344    )
    Plaintiff,    )
        )
VS.    )
        )    CASE NO. 2:06-CV-1117-MEF
        )
KENNETH SCONYERS, CAPTAIN, et.al.    )
    Defendant (s)    )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Kenneth Sconyers, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Kenneth Sconyers, and I am presently employed as Correctional Captain, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 19, 2006, Inmate Edward Brown was placed into Dorm 6A (Restricted Privilege Dorm) pending investigation and disciplinary action for violation of rule #38- Indecent Exposure/Exhibitionism. Officer Patricia Brantley, Tower Officer initiated disciplinary action against Inmate Brown after observing him in the act of masturbating while outside the kitchen. Inmate Brown was then officially charged with a violation of Rule #38 – Indecent Exposure/Exhibitionism.

On July 5, 2006, I reviewed disciplinary action that had been initiated against Inmate Edward Brown. I closely reviewed all documentation, signatures, and dates to ensure that the disciplinary report had been properly served and executed with no due process or procedural violations. I reviewed the sworn testimonies of the arresting officer, Inmate Brown, and the witnesses. I observed that the questioning of the arresting officer revealed that Officer Brantley had closely observed Inmate Brown with the aid of binoculars. Though the witnesses did not observe the actions of Inmate Brown, their testimony did not refute the allegations. I reviewed the Hearing Officer's finding of fact as well as the basis for the finding of fact. I concluded that they had satisfied the necessary elements of proof to substantiate the Hearing


EXHIBIT
B

Affidavit - Kenneth Sconyers
Civil Action – 2:06-CV-1117-MEF
Page 2

Officer's verdict of guilty. I approved the Hearing Officer's recommendation that Inmate Brown receive confinement to disciplinary segregation and loss of privileges for a period of 45 days as punishment for his offense (Exb #1).

Inmate Brown received his copy of the approved disciplinary report on July 7. He was then assigned to the Segregation Unit to serve those sanctions imposed against him. On August 17, Inmate Brown was released from the Segregation Unit, four days before his segregation time was completed, and was allowed to serve the remainder of his sanctions in the Restricted Privilege Dorm.

Easterling Correctional Facility is a Medium Custody, Level IV Institution. Assignments to our institution of Close or Maximum custody inmates is only a temporary assignment until their transfer. Any inmates of Close or Maximum custody, which are temporarily assigned to our segregation unit, are confined to a one-man cell and are prevented from physical contact with other inmates.

Inmate Brown is incorrect in his allegation that Dormitory 6A is a segregation Unit. There are no single cells in Dorm 6A (Restricted Privilege Dorm). There is no loss of liberty interests for inmates assigned there. Instead, it is of an open bay dormitory design, as is all our population dorms. The Restricted Privilege Dorm serves as a management tool that enables us to group inmates who have lost their privileges (via disciplinary action), to isolate them from those inmates who still maintain their privileges, and to impose and complete approved loss of privilege sanctions. Allowing those inmates who have lost their privileges to remain with those inmates who have not promotes rule violations such as bartering and trading, theft of property, box break-ins, and fights.

I have no input into, nor control over the number of inmates assigned to our facility. Easterling's inmate population is determined by the Department of Corrections.

I have not violated the provisions of Department of Corrections Administrative Regulation #403; nor have I acted with any person/official to violate Inmate Brown's constitutional rights.

KENNETH SCONYERS

Affidavit – Kenneth Sconyers
Civil Action – 2:06-CV-1117-MEF
Page 3

SWORN TO AND SUBSCRIBED TO before me this the ___6th___ day of
___February___, 2007.

___Linda E. Teal___
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

ENTERED JUL 0 1 2006

ALDOC Form 225B
DISC.#06-432

ECF-05-

1. INMATE : **Edward Brown**     CUSTODY: **Medium**     AIS NO.: **B/201344**

2. FACILITY:

3. The above named inmate is being charged by **Officer Patricia Brantley** with violation of rule **#38** specifically **Indecent Exposure** from regulation # **403**, which occurred on or about **June 19, 2006** at (time) **approximately 5:40** (am / **pm**), Location: **Behind kitchen**   A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows:
   **You, Inmate Edward Brown, B/201344, were observed by Officer Patricia Brantley stroking your exposed, erect penis in a backward and forward motion while looking directly at Officer Brantley behind the kitchen.**

5. ___19 JUNE 2006___          ___Patricia Brantley, COI___
   Date                              Arresting Officer / Signature / Rank
                                     **Officer Patricia Brantley**

6. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the ___19th___ day of ___JUNE___, 2006, at (time) ___9:15___ (am/**pm**).

7. ___Rodney Wilson CO-I___          ___Refused to sign - Rodney Wilson CO-I___
   Serving Officer / Signature / Rank     Inmate's Signature / AIS Number

8. Witnesses desired?   NO _____     YES ___Edward Brown___
                        Inmate's Signature                Inmate's Signature

9. If yes, list: ___Officer M. Jordan, Steward Johnson___

10. Hearing Date ___7-3-06___   Time ___330 p.m.___   Place ___Segregation Lt. Office___

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate (is / is not) capable of representing himself.
    _____
    Signature / Hearing Officer

13. Plea: ___Edward Brown #801344___ Not Guilty    _____ Guilty

14. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _____
    Signature / Hearing Officer

15. Arresting Officer's testimony (at the hearing): **On the above date and time, I was Tower Officer. At approximately 5:40 PM, I observed Inmate Edward Brown, sitting at the back of the Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking directly at me in the Tower.**

Annex C to AR 403 ( Page 1 of 3 pages )

AR 403 January 30, 2003

16.   Inmate's Testimony:   On the nineteenth of July, I took the top barrels outside. I
had some cookies and some juice, so I sat down outside to eat my cookies and drink my
juice in the back of the kitchen.   The next thing I know, Steward Johnson came out back
and told me to come in, and she got my name and AIS number and gave it to Officer Brant-
ley.   (See attached questions).

Witness:  _Nathan Paden COI_    Substance of Testimony:  (See attached
questions).

Witness:  _Margaret Johnson_    Substance of Testimony: Mrs. Brantley called me
in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-
turbating on her.   I went to the back door of the kitchen, and Inmate Edward Brown was
the XXXXXXXX inmate sitting out back facing the XXXXXXXXXXXXXXXXXX Tower.

17.   The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are
      attached.

_Linda Glenn COI_
Signature / Hearing Officer

18.   The Following witnesses were not called      -      reason not called
      1.   N/A                                           N/A
      2.
      3.

19.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
      The Hearing Officer finds that :   On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,
Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-
ward motion, while looking directly at Officer Brantley in the Tower.   Therefore, Inmate
Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.

20.   Basis for Finding of Fact:   Officer Patricia Brantley stated under oath that she observed
Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,
erect penis in a backward and forward motion, while looking directly at her in the Tower.
Inmate Brown's statement was not believable.   Witness Steward Johnson's testimony confirmed

21.   Hearing Officer's Decision:            X    Guilty                         charge.
                                                 Not Guilty

22.   Recommendation of Hearing Officer:  Hearing officer recommends 45 days Disciplinary
Segregation and 45 days loss of all privileges.
*Not earning good time.

_Linda Glenn COI_
Signature / Hearing Officer
Linda Glenn, COI
Typed Name and Title

23.   Warden's Action – Date   _7-5-06_
      Approved   _Kenneth Sconyer CoSI_
      Disapproved
      Other (specify)

      Reason if more then 30 calendar days delay in
      action.

25.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
      Named inmate on this the ___7___ day of __JULY__ 200_6_, at (time) _12:30_ (am/pm).

_Nur Fay, COI_                              REFUSED TO SIGN _D. Fay_ JCI
Signature / Serving Officer / Title         Inmate's Signature and AIS Number
                                            Annex C of AR 403 (page 2 of 3 pages)

16.   Inmate's Testimony:   On the nineteenth of July, I took the op barrels outside. I
had some cookies and some juice, so I sat down outside to eat my cookies and drink my
juice in the back of the kitchen. The next thing I know, Steward Johnson came out back
and told me to come in, and she got my name and AIS number and gave it to Officer Brant-
ley. (See attached questions).

       Witness: *Matthew Faylor CUI*     Substance of Testimony:  (See attached
questions).

       Witness: *Margaret Johnson*     Substance of Testimony: Mrs. Brantley called me
in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-
turbating on her. I went to the back door of the kitchen, and Inmate Edward Brown was
the XXXXXXXX inmate sitting out back facing theXXXXXXXXXXXXXXXXXXXX Tower.

17.   The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are
      attached.

                                         *Linda Glenn C01*
                                         Signature / Hearing Officer

18.   The Following witnesses were not called    -     reason not called
      1.   N/A                                          N/A
      2.
      3.

19.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
      The Hearing Officer finds that:  On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,
Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-
ward motion, while looking directly at Officer Brantley in the Tower. Therefore, Inmate
Brown was in violation of Rule #38—Indecent Exposure/Exhibitionism.

20.   Basis for Finding of Fact:  Officer Patricia Brantley stated under oath that she observed
Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,
erect penis in a backward and forward motion, while looking directly at her in the Tower.
Inmate Brown's statement was not believable.  Witness Steward Johnson's testimony confirmed

21.   Hearing Officer's Decision:              X    Guilty                                charge.
                                                   Not Guilty

22.   Recommendation of Hearing Officer:  Hearing officer recommends 45 days Disciplinary
Segregation and 45 days loss of all privileges.
*Not earning good time.

                                         *Linda Glenn C01*
                                         Signature / Hearing Officer
                                         Linda Glenn, C01
                                         Typed Name and Title

23.   Warden's Action – Date   7-5-06
      Approved               *Kenneth Sconyers CoSII*
      Disapproved
      Other (specify)

      Reason if more then 30 calendar days delay in
      action.

25.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
      Named inmate on this the    7    day of  JULY  2006, at (time)  12:30 (am/ pm).
                                                                          EDT
      *Nur Jay*, C01              REFUSED TO SIGN *P. Jay*, C01
      Signature / Serving Officer / Title     Inmate's Signature and AIS Number
                                              Annex C of AR 403 (page 2 of 3 pages)

1. Q: Officer Brantly are you a professional Officer?
   A: Not Relevant.

2. Q: Officer Brantly, by you been a professional Officer that mean you can write descriplinary to where a inmate is Guilty even if he is not? Not Relevant it's Not up to Arresting Officer About
   A: guilt or innocence.

3. Q: Officer Brantly where was your post on June 19 2006?
   A: Tower Officer.

4. Q: Officer Brantly was you setting down or standing up?
   A: Sitting on the Stool looking at the Back of the Kitchen With the Binoculars

5. Q: Officer Brantly how long was you looking at inmate Edward Brown? Not Relevant.
   A:

6. Q: Officer Brantly, If inmate Edward Brown was exposed could you tell the hearing Officer is he circumcise OR uncircumcise? — Not Relevant.
   A:

7. Q: Officer Brantly, was inmate Edward Brown still strokking his exposed erect peniss when steward Johnson came't got him?
   A: He had Stopped When Steward Johnson Came at back.

8: Q: Officer Brantly, At the time you saw Inmate Edward Braxon, did he have his eyeglasses on? *No.*

A:

1: Q: Officer Jordan, where was your post on June 19.06 ?
A: Kitchen Officer.

2: Q: Officer Jordan, are you able to see who is in the Tower from the back of the kitchen while the Officer is setting down? *No. I Can't.*
A:

3: Q: Officer Jordan, did you see Officer Brantly setting down or Standing up when came out behind the kitchen?
A:                                    *Not Relevant.*

4: Q: Officer Jordan, when you approach Inmate Edward Braxon what did you see him doing? *Sitting on the Air Condition at Back*
A: *Body Toward The Tower.*

1. Q Steward Johnson, when Officer Brantly call you, what did she
ask you to do & what did she say on the Phone?
A: That an inmate was sitting in back of the kidds masturbating.

2. Q: Steward Johnson, when you approach inmate edward Brown
did he see you? To my knowledge No.
A:

3. Q: Steward Johnson, did you see inmate edward Brown with his
exposed erect penis stroking it in a backward & forward motion?
A: No

4. Q: Steward Johnson was you sure that inmate edward Brown
was the one? Yes.
A:

5. Q: Steward Johnson, why was you not sure?
A: I'm sure the inmate I saw was inmate Brown.

**EXHIBIT 1**

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

RECEIVED JUL 0 6 2006

# INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: **6-19-06** | 3. Time: **5:40 p.m.** | 4. Incident Number: **ECF-06- 697** | Class Code: **C** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: **Behind the Kitchen** | 6. Type of Incident: **R/V#38-Indecent exposure/Exhibitionism** |
|---|---|

| 7. Time Incident Reported: **5:44 p.m.** | 8. Who Received Report: **Lt. D. C. Wilson** *D.C. Wilson, CBSI* |
|---|---|

**9. Victims:**

| | Name | | | AIS |
|---|---|---|---|---|
| a. | **N/A** | | No. | **N/A** |
| b. | | | No. | |
| c. | | | No. | |

**10. Suspects:**   Name   AIS      **11. Witnesses:**   Name   AIS

| | Name | AIS | | Name | AIS |
|---|---|---|---|---|---|
| a. | **Edward Brown**   No. | **B/201344** | a. | **N/A**   No. | **N/A** |
| b. | No. | | b. | No. | |
| c. | No. | | c. | No. | |
| d. | No. | | d. | No. | |
| e. | No. | | e. | No. | |
| | | | f. | No. | |
| | | | g. | No. | |

**PHYSICAL EVIDENCE:**
12. Type of Evidence
**N/A**

13. Description of Evidence:
**N/A**

14. Chain of Evidence:
a **N/A**
b
c
d
e

15. Narrative Summary:

On June 19, 2006, Officer Patricia Brantley was assigned as the Tower Officer. At approximately 5:40 p.m., Officer Brantley observed Inmate Edward Brown, B/201344, (a kitchen worker) sitting on the air conditioning unit behind the kitchen. Inmate Brown was stroking his exposed, erect penis, in an upward and downward motion while looking at Officer Brantley in the Tower. At approximately 5:41 p.m., Officer Brantley telephoned the Kitchen Rover, Officer Matthew Jordan, and advised him of Inmate Brown's action. Officer Jordan exited the kitchen and ordered Inmate Brown to report to the Shifts Commander's Office. Inmate Brown complied. At approximately 5:44 p.m., Officer Brantley notified Lt. D. C. Wilson of the incident. Inmate Brown reported that he was not masturbating. Lt. Wilson verbally reprimanded Inmate Brown on his negative behavior. Inmate Brown was placed in Dorm #6A (Hot Dorm) pending disciplinary action for rule violation #38-Indecent exposure/Exhibitionism.

*Patricia Brantley COI*
Patricia Brantley, COI

| Distribution:  ORIGINAL AND ONE (1) COPY to Central I & I Division | COPY to Deputy Commissioner of Operations (Class A and B ONLY) |
|---|---|
| COPY to Institutional File | COPY to Central Records Office |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344      )
    Plaintiff,                )
                            )
VS.                          )
                            )     CASE NO. 2:06-CV-1117-MEF
                            )
KENNETH SCONYERS, CAPTAIN, et.al.  )
    Defendant (s)             )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Patricia Brantley, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Patricia Brantley, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 19, 2006, I observed inmate Edward Brown #201344, sitting on the air condition unit behind the kitchen, in the act of masturbating while looking at me in the Tower. I telephoned the Kitchen Officer and advised of Inmate Brown's actions. The Kitchen Officer exited the kitchen and ordered Inmate Brown to report to the Shift Commander's Office (Exhibit #1).

Inmate Brown was served with a Disciplinary for violation of rule #38-Indecent Exposure (Exhibit #2). On July 3, 2006, a Disciplinary Hearing was conducted, and Inmate Brown was found guilty of charge.

I have not violated Inmate Brown's Constitutional Rights.

_Patricia Brantley_
PATRICIA BRANTLEY

SWORN TO AND SUBSCRIBED TO before me this the _____ 8th _____ day of
_February_____, 2007.

_Grace M. McLin_
NOTARY PUBLIC

My Commission Expires: **My Commission Expires 3-31-2007**

EXHIBIT

C

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

RECEIVED JUL 0 6 2006

# INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: **6-19-06** | 3. Time: **5:40 p.m.** | 4. Incident Number: **ECF-06- 697** | Class Code: **C** |
|---|---|---|---|---|
| 5. Location Where Incident Occurred: **Behind the Kitchen** | | 6. Type of Incident: **R/V#38-Indecent exposure/Exhibitionism** | | |
| 7. Time Incident Reported: **5:44 p.m.** | | 8. Who Received Report: **Lt. D. C. Wilson** *D.C. Wilson, CSSI* | | |

| 9. Victims: | Name | | AIS | |
|---|---|---|---|---|
| a. | **N/A** | No. | **N/A** | |
| b. | | No. | | |
| c. | | No. | | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | **Edward Brown** | No. | **B/201344** | a. | **N/A** | No. | **N/A** |
| b. | | No. | | b. | | No. | |
| c. | | No. | | c. | | No. | |
| d. | | No. | | d. | | No. | |
| e. | | No. | | e. | | No. | |
| | | | | f. | | No. | |
| | | | | g. | | No. | |

**PHYSICAL EVIDENCE:**

12. Type of Evidence
**N/A**

13. Description of Evidence:
**N/A**

14. Chain of Evidence:
a **N/A**
b
c
d
e

15. Narrative Summary:

On June 19, 2006, Officer Patricia Brantley was assigned as the Tower Officer. At approximately 5:40 p.m., Officer Brantley observed Inmate Edward Brown, B/201344, (a kitchen worker) sitting on the air conditioning unit behind the kitchen. Inmate Brown was stroking his exposed, erect penis, in an upward and downward motion while looking at Officer Brantley in the Tower. At approximately 5:41 p.m., Officer Brantley telephoned the Kitchen Rover, Officer Matthew Jordan, and advised him of Inmate Brown's action. Officer Jordan exited the kitchen and ordered Inmate Brown to report to the Shifts Commander's Office. Inmate Brown complied. At approximately 5:44 p.m., Officer Brantley notified Lt. D. C. Wilson of the incident. Inmate Brown reported that he was not masturbating. Lt. Wilson verbally reprimanded Inmate Brown on his negative behavior. Inmate Brown was placed in Dorm #6A (Hot Dorm) pending disciplinary action for rule violation #38-Indecent exposure/Exhibitionism.

*Patricia Brantley CoI*
Patricia Brantley, COI

**EXHIBIT 2**

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

ENTERED JUL 0 1 2006    ECF-05-

ALDOC Form 225B
DISC.#06-432

1.   INMATE : **Edward Brown**    CUSTODY:  **Medium**    AIS NO.:  **B/201344**

2.   FACILITY:

3.   The above named inmate is being charged by <u>Officer Patricia Brantley</u> with violation of rule <u>#38</u> specifically
     <u>Indecent Exposure</u> from regulation # <u>403</u>, which occurred on or about <u>June 19, 2006</u> at (time) <u>approximately</u>
     <u>5:40</u> (am / **pm**), Location: <u>Behind kitchen</u>   A hearing on this charge will be held after 24 hours from service.

4.   Circumstances of the violation(s) are as follows:
     <u>You, Inmate Edward Brown, B/201344, were observed by Officer Patricia Brantley stroking your exposed,</u>
     <u>erect penis in a backward and forward motion while looking directly at Officer Brantley behind the</u>
     <u>kitchen.</u>

5.   ___19 JUNE 2006___            ___Patricia Brantley, COI___
     Date                          Arresting Officer / Signature / Rank
                                   **Officer Patricia Brantley**

6.   I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I
     informed inmate of his right to present a written or oral statement at the hearing and to present written questions
     for the witnesses on the this the ___19th___ day of ___JUNE___, 2006, at (time) ___9:15___ (am/**pm**).

7.   ___Rodney Wilson COI___      ___Refused to sign  Rodney Wilson COI___
     Serving Officer / Signature / Rank    Inmate's Signature / AIS Number

8.   Witnesses desired?   NO _____   YES ___Edward Brown___
                          Inmate's Signature                Inmate's Signature

9.   If yes, list: ___Officer M. Jordan , Steward Johnson___

10.  Hearing Date ___7-3-06___   Time ___330 p.m.___   Place ___Segregation Law Office___

11.  Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12.  A finding is made that inmate (is / is not) capable of representing himself.
                                   ___Dado Allen CII___
                                   Signature / Hearing Officer

13.  Plea: ___Edward Brown #201344___ Not Guilty   _____ Guilty

14.  The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
                                   ___Dada Allen CII___
                                   Signature / Hearing Officer

15.  Arresting Officer's testimony (at the hearing): <u>On the above date and time, I was Tower Officer.</u>
     <u>At approximately 5:40 PM, I observed Inmate Edward Brown, sitting at the back of the</u>
     <u>Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking</u>
     <u>directly at me in the Tower.</u>

Annex C to AR 403 ( Page 1 of 3 pages )

AR 403 January 30, 2003

16.   Inmate's Testimony:   On the nineteenth of July, I took the op barrels outside.  I had some cookies and some juice, so I sat down outside to eat my cookies and drink my juice in the back of the kitchen.  The next thing I know, Steward Johnson came out back and told me to come in, and she got my name and AIS number and gave it to Officer Brantley.  (See attached questions).

Witness:  _Nathan J ____ CoI_    Substance of Testimony:  (See attached questions).

Witness:  _Margate Johnson_    Substance of Testimony: Mrs. Brantley called me in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, masturbating on her.  I went to the back door of the kitchen, and Inmate Edward Brown was the XXXXXXXXX inmate sitting out back facing the XXXXXXXXXXXXXXXXXXXX Tower.

17.   The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

_Linda Glenn / COI_
Signature / Hearing Officer

18.   The Following witnesses were not called        reason not called
1.   N/A                                             N/A
2.
3.

19.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
The Hearing Officer finds that:  On 06/19/06, at approximately 5:40 PM, Behind the Kitchen, Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and forward motion, while looking directly at Officer Brantley in the Tower.  Therefore, Inmate Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.

20.   Basis for Finding of Fact:  Officer Patricia Brantley stated under oath that she observed Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking directly at her in the Tower.  Inmate Brown's statement was not believable.  Witness Steward Johnson's testimony confirmed

21.   Hearing Officer's Decision:        X    Guilty                                    charge.
                                              Not Guilty

22.   Recommendation of Hearing Officer:  Hearing officer recommends 45 days Disciplinary Segregation and 45 days loss of all privileges.
*Not earning good time.

_Linda Glenn_
Signature / Hearing Officer
Linda Glenn, COI
Typed Name and Title

23.   Warden's Action – Date   _7-5-06_
Approved   _Kenneth Jones   CoSII_
Disapproved
Other (specify)

Reason if more then 30 calendar days delay in action.

25.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above.
Named inmate on this the ___7___ day of __July__ 2006, at (time) _12:20_ (am / pm).

_____ COI                      REFUSED TO SIGN P. Fay, CoI
Signature / Serving Officer / Title          Inmate's Signature and AIS Number
                                             Annex C of AR 403 (page 2 of 3 pages)

16.    Inmate's Testimony:   On the nineteenth of July, I took the slop barrels outside. I
had some cookies and some juice, so I sat down outside to eat my cookies and drink my
juice in the back of the kitchen.   The next thing I know, Steward Johnson came out back
and told me to come in, and she got my name and AIS number and gave it to Officer Brant-
ley.   (See attached questions).

        Witness:  _Matthew Paden COI_    Substance of Testimony:  (See attached
questions).

        Witness:  _Margaret Johnson_    Substance of Testimony: Mrs. Brantley called me
in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-
turbating on her.   I went to the back door of the kitchen, and Inmate Edward Brown was
the XXXXXXXX inmate sitting out back facing the XXXXXXXXXXXXXXXXXX Tower.


17.    The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are
       attached.
                                    _Linda Glenn COI_
                                    Signature / Hearing Officer

18.    The Following witnesses were not called    -    reason not called
       1.   N/A                                        N/A
       2.
       3.

19.    After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
       The Hearing Officer finds that :  On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,
Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-
ward motion, while looking directly at Officer Brantley in the Tower.   Therefore, Inmate
Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.

20.    Basis for Finding of Fact:  Officer Patricia Brantley stated under oath that she observed
Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,
erect penis in a backward and forward motion, while looking directly at her in the Tower.
Inmate Brown's statement was not believable.   Witness Steward Johnson's testimony confirmed
21.    Hearing Officer's Decision:            X    Guilty                              charge.
                                                   Not Guilty
22.    Recommendation of Hearing Officer:  Hearing officer recommends 45 days Disciplinary
Segregation and 45 days loss of all privileges.
*Not earning good time.
                                    _Linda Glenn COI_
                                    Signature / Hearing Officer
                                    Linda Glenn, COI
                                    Typed Name and Title
23.    Warden's Action – Date  _7-5-06_
       Approved          _Kenneth Strength COII_
       Disapproved
       Other (specify)

       Reason if more then 30 calendar days delay in
       action.

25.    I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above.
       Named inmate on this the ___7___ day of __JULY__ 200_6_, at (time) _12:30_ (am/ pm).

_____ COI                        REFUSED TO SIGN P. Fay ,CV
Signature / Serving Officer / Title     Inmate's Signature and AIS Number
                                        Annex C of AR 403 (page 2 of 3 pages)

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344        )
    Plaintiff,        )
                                   )
    VS.        )
                                   )        CASE NO. 2:06-CV-1117-MEF
                                   )
KENNETH SCONYERS, CAPTAIN, et.al.        )
    Defendant (s)        )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Linda Glenn, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Linda Glenn, and I am presently employed as Correctional Officer, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On July 3, 2006, at approximately 3:30 PM, I was assigned as the Hearing Officer, on Inmate Edward Brown #201344, disciplinary for violation of rule # 38-Indecent Exposure. I found Inmate Brown guilty based on the arresting officer stating under oath that she observed Inmate Edward Brown masturbating while looking directly at her in the Tower. Also, the witness stated that she observed Inmate Brown sitting out back facing the Tower (Exhibit #1).

I found that Inmate Brown's statement was not believable. I ensured that all elements of the violation were satisfied. As the Hearing Officer I ensured that Inmate Brown had received due process as outlined in Administrative Regulations #403 (Exhibit #2).

I have no input nor control over the number of inmates assigned to Easterling Correctional Facility.

I have not violated Inmate Brown's Constitutional Rights.

LINDA GLENN

EXHIBIT

D

PENGAD 800-631-6989

Affidavit – Linda Glenn
Civil Action – 2:06-CV-1117-MEF
Page 2

SWORN TO AND SUBSCRIBED TO before me this the ___9th___ day of
___February___, 2007.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

ALABAMA DEPARTMENT OF CORRECTIONS
DISCIPLINARY REPORT

ENTERED JUL 0 1 2006

ECF-05-

ALDOC Form 225B
DISC.#06-432

1. INMATE : **Edward Brown**    CUSTODY: **Medium**    AIS NO.: **B/201344**

2. FACILITY:

3. The above named inmate is being charged by <u>Officer Patricia Brantley</u> with violation of rule **#38** specifically <u>Indecent Exposure</u> from regulation # **403**, which occurred on or about <u>June 19, 2006</u> at (time) **approximately 5:40** (am / **pm**), Location: <u>Behind kitchen</u>    A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows:
   **You, Inmate Edward Brown, B/201344, were observed by Officer Patricia Brantley stroking your exposed, erect penis in a backward and forward motion while looking directly at Officer Brantley behind the kitchen.**

5. _19 JUNE 2006_    _Patricia Brantley, COI_
   Date                    Arresting Officer / Signature / Rank
                           **Officer Patricia Brantley**

6. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I informed inmate of his right to present a written or oral statement at the hearing and to present written questions for the witnesses on this the _19th_ day of _June_, 2006, at (time) _9:15_ (am/**pm**).

7. _Rodney Wilson CO-I_    _Refused to sign Rodney Wilson CO-I_
   Serving Officer / Signature / Rank    Inmate's Signature / AIS Number

8. Witnesses desired?    NO _____    YES _Edward Brown_
                         Inmate's Signature              Inmate's Signature

9. If yes, list: _Officer M. Jordan, Steward Johnson_

10. Hearing Date _7-3-06_    Time _330 p.m._    Place _Sergeant's Lt. Office_

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate (is /~~is not~~) capable of representing himself.
    _Linda Oslen CLA_
    Signature / Hearing Officer

13. Plea: _Edward Brown #201344_ ~~Not Guilty~~ _____ Guilty

14. The Arresting Officer, Inmate, and all witnesses were sworn to tell the truth.
    _Linda Oslen CLA_
    Signature / Hearing Officer

15. Arresting Officer's testimony (at the hearing): <u>On the above date and time, I was Tower Officer. At approximately 5:40 PM, I observed Inmate Edward Brown, sitting at the back of the Kitchen, stroking his exposed, erect penis in a backward and forward motion, while looking directly at me in the Tower.</u>

Annex C to AR 403  ( Page 1 of 3 pages )

AR 403 January 30, 2003

16.   Inmate's Testimony:  <u>On the nineteenth of July, I took the</u> <u>op barrels outside. I</u>
<u>had some cookies and some juice, so I sat down outside to eat my cookies and drink my</u>
<u>juice in the back of the kitchen.  The next thing I know, Steward Johnson came out back</u>
<u>and told me to come in, and she got my name and AIS number and gave it to Officer Brant-</u>
<u>ley.  (See attached questions).</u>

Witness:  _Matthew Pesha COI_    Substance of Testimony:  <u>(See attached</u>
<u>questions).</u>

Witness:  _Margaret Johnson_    Substance of Testimony: <u>Mrs. Brantley called me</u>
<u>in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-</u>
<u>turbating on her.  I went to the back door of the kitchen, and Inmate Edward Brown was</u>
<u>the XXXXXXXX inmate sitting out back facing the XXXXXXXXXXXXXXXXXXX Tower.</u>

17.   The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are attached.

_Linda Glenn COI_
Signature / Hearing Officer

18.   The Following witnesses were not called   -    reason not called
    1.  **N/A**                    **N/A**
    2.
    3.

19.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
    The Hearing Officer finds that:  <u>On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,</u>
<u>Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-</u>
<u>ward motion, while looking directly at Officer Brantley in the Tower.  Therefore, Inmate</u>
<u>Brown was in violation of Rule #38–Indecent Exposure/Exhibitionism.</u>

20.   Basis for Finding of Fact:  <u>Officer Patricia Brantley stated under oath that she observed</u>
<u>Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,</u>
<u>erect penis in a backward and forward motion, while looking directly at her in the Tower.</u>
<u>Inmate Brown's statement was not believable.  Witness Steward Johnson's testimony confirmed</u>

21.   Hearing Officer's Decision:      **X**   Guilty                  **charge.**
                                       Not Guilty

22.   Recommendation of Hearing Officer:  <u>Hearing officer recommends 45 days Disciplinary</u>
<u>Segregation and 45 days loss of all privileges.</u>
**\*Not earning good time.**

_Linda Glenn COI_
Signature / Hearing Officer
**Linda Glenn, COI**
Typed Name and Title

23.   Warden's Action – Date    _7-5-06_
    Approved       _Kenneth Storey CoSII_
    Disapproved
    Other (specify)

    Reason if more then 30 calendar days delay in
    action.

25.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above
    Named inmate on this the   _7_   day of  _JULY_  2006, at (time) _12:30_ (am/ pm).

_____, COI             REFUSED TO SIGN _P. Fay_ ICI
Signature / Serving Officer / Title          Inmate's Signature and AIS Number
                                  Annex C of AR 403 (page 2 of 3 pages)

16.   Inmate's Testimony:   On t. nineteenth of July, I took the  )op barrels outside. I
had some cookies and some juice, so I sat down outside to eat my cookies and drink my
juice in the back of the kitchen.  The next thing I know, Steward Johnson came out back
and told me to come in, and she got my name and AIS number and gave it to Officer Brant-
ley.  (See attached questions).

Witness: _Matthew Parker, CUI_    Substance of Testimony:  (See attached
questions).

' Witness: _Margaret Johnson_    Substance of Testimony: Mrs. Brantley called me
in the Kitchen and said that an inmate was sitting down at the back of the Kitchen, mas-
turbating on her.  I went to the back door of the kitchen, and Inmate Edward Brown was
the XXXXXXXX inmate sitting out back facing theXXXXXXXXXXXXXXXXX Tower.

17.   The Inmate was allowed to submit written question to all witnesses.  Copy of questions and answers are
      attached.
                                         _Linda Glenn, COI_
                                         Signature / Hearing Officer

18.   The Following witnesses were not called     -   reason not called
      1.   N/A                                        N/A
      2.   _____                   _____
      3.   _____                   _____

19.   After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
      The Hearing Officer finds that :  On 06/19/06, at approximately 5:40 PM, Behind the Kitchen,
Inmate Edward Brown, B/201344, did stroke his exposed, erect penis in a backward and for-
ward motion, while looking directly at Officer Brantley in the Tower.  Therefore, Inmate
Brown was in violation of Rule #38-Indecent Exposure/Exhibitionism.

20.   Basis for Finding of Fact:.  Officer Patricia Brantley stated under oath that she observed
Inmate Edward Brown, B/201344, sitting at the back of the Kitchen, stroking his exposed,
erect penis in a backward and forward motion, while looking directly at her in the Tower.
Inmate Brown's statement was not believable.  Witness Steward Johnson's testimony confirmed

21.   Hearing Officer's Decision:            X    Guilty                                charge.
                                                  Not Guilty

22.   Recommendation of Hearing Officer: Hearing officer recommends 45 days Disciplinary
Segregation and 45 days loss of all privileges.
*Not earning good time.

                                         _Linda Glenn, COI_
                                         Signature / Hearing Officer

                                         Linda Glenn, COI
                                         Typed Name and Title

23.   Warden's Action – Date     _7-5-06_
      Approved              _Kenneth Sconyers, CoSII_
      Disapproved
      Other (specify)      _____

      Reason if more then 30 calendar days delay in     _____
      action.                                           _____

25.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above.
      Named inmate on this the _____7_____ day of _JULY_ 2005, at (time) _12:30_ (am/ pm).
                                                        GOF
      _____, COI        REFUSED TO SIGN _P. Fay_, CU
      Signature / Serving Officer / Title                Inmate's Signature and AIS Number
                                                         Annex C of AR 403 (page 2 of 3 pages)





## State of Alabama
## Alabama Department of Corrections

**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION
NUMBER            403

OPR: INSTITUTIONS

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

I    **GENERAL**

A.    This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.    A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.    Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.    When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.    Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a

serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II    DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III    PROCEDURE BEFORE HEARING

A.    Arrest or Charge of Inmate

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344          )
    Plaintiff,                    )
                                  )
    VS.                           )
                                  )    CASE NO. 2:06-CV-1117-MEF
                                  )
KENNETH SCONYERS, CAPTAIN, et.al. )
    Defendant (s)                 )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Anthony Askew</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Anthony Askew,</u> and I am presently employed as <u>Correctional Chaplain</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

In response to the plaintiff's complaint that the volunteers of the Moorish Science Temple Community are not granted the opportunity to bring food for their gathering-this is true. In accordance with the State of Alabama Department of Corrections Administrative Regulation Number 333 (P.6 section b- Religious Celebrations Where Food is Required), only groups who have prior approval are allowed to bring food for their religious celebrations (Exhibit 1). The Moorish Science Temple Community is not an approved group, nor has anyone applied at Easterling Correctional Facility to become a religious volunteer for the Moorish Science Temple Community in the past ten years.

As the Chaplain of the Department of Corrections, I do not arbitrarily decide which group can or cannot bring food into the correctional facility. I am governed and mandated to follow the applicable Department of Correction regulation.

In response to the plaintiff's complaint, that I, Chaplain Askew, fail to treat religious groups in an unbiased manner, I categorically deny treating any religious community in an unfair or unjust manner.

I further deny violating the plaintiff's, or his communities', first amendment rights.



EXHIBIT

E

Affidavit – Anthony Askew
Civil Action – 2:06-CV-1117-MEF
Page 2

_____
ANTHONY ASKEW

SWORN TO AND SUBSCRIBED TO before me this the ___9 th___ day of
___February___ , 2007.

_____
NOTARY PUBLIC

My Commission Expires: ___7-15-07___




**BOB RILEY**
GOVERNOR

**State of Alabama**

# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**Donal Campbell**
COMMISSIONER

December 17, 2004

ADMINISTRATIVE REGULATION              OPR: PROGRAMS SERVICES
NUMBER                        333

## RELIGIOUS PROGRAM SERVICES

I.  **GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for recognition of religious beliefs and practices of committed offenders.

II.  **POLICY**

The ADOC has the policy to permit offenders the privilege/right to worship their declared faith and to identify activities and practices most commonly approved.

III.  **DEFINITION (S) AND ACRONYM (S)**

A.  Approved free-world sponsor(s):  An organization that has been approved through the Chaplain and the Warden to bring in ministry items for Chaplaincy ministries and religious programs and food for a specific religious celebration.

B.  PMOD:  Prisoner Money On Deposit.

C.  Religious Activities Review Committee (RARC):  This committee consists of the Deputy Commissioner of Programs (Chair Person), the Chaplaincy Program Coordinator, and four senior regional Chaplains.

IV.  **RESPONSIBILITIES**

A.  The Departmental Chaplaincy Coordinator is responsible for:

1.  Serving as a liaison with outside offices and agencies for faith-based treatment initiatives.

Dandelions to decorate the altar
Plastic egg (green) – represents the earth.

Beltane       April 30
 Candles: Red (God) and Green (Goddess)
 Stones: Heliotrope or Bloodstone
 Roses to decorate the altar, along with flowers and green
 Branches
 May basket: resembles an Easter basket and will contain
 roses
 May pole: No more than two feet long
 Four lengths of ribbon (2 red, 2 white)

Litha (Summer/Midsummer)  June 22 (varies)
 Candles: 1 blue and 1 green
 Stones: Tiger's Eye or Lapis Lazuli

Lughnasadh     August 2
 Candles: 1 orange and 1 green
 Stones: Citrine and Peridot
 Libation: Instant Oatmeal (to be eaten and given as an
 offering); one ear of corn (to be burned as offering) to be
          eaten and given as a part of
          the religious ceremony

Mabon (Fall Equinox)   September 21
 Candles: deep gold and violet
 Stones: Amethyst
 Herbs: cedar

B. **Religious celebrations where food is required.**

An "approved free-world sponsor(s)" will be responsible for submitting a dinner menu to the Chaplain at least 20 days prior to the date of the celebration. The free-world sponsor(s) must plan the dinner menu to accommodate the number of inmates attending the religious celebration. The Warden shall review and approve the dinner menu.  If an approved free-world sponsor cannot be found, the inmates shall be fed from the regular dinner menu.

C. The following religious events and religious celebrations have been given permission to have food brought into the institution by free-world sponsor(s):

1. <u>Kairos Events</u>.  Four times each year, usually once each quarter, and is open to all inmate groups.

2. <u>Ramadhan Eid Feast</u>.  The Festival of Fast – Breaking at the conclusion of Ramadhan.  This ceremony is for traditional Muslims, but other Muslim groups may participate (q.v. Moorish Science Temple and Nation of Islam).

AR 333 – December 17, 2004

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344          )
    Plaintiff,                              )
                            )
    VS.                                    )
                            )        CASE NO. 2:06-CV-1117-MEF
                            )
KENNETH SCONYERS, CAPTAIN, et.al.  )
    Defendant (s)                          )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Stephanie Scott</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Stephanie Scott</u>, and I am presently employed as <u>Drug Treatment Counselor</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

At no time did I, Stephanie Scott, Drug Treatment Counselor, coerce Inmate Edward Brown, #201344, into entering and participating in Pre-Treatment. At no time did I inflict punishment into Crime Bill. At no time did I violate Inmate Brown's constitutional rights.

Inmate Brown submitted a Pre-Treatment application on October 20, 2006 (Exhibit #1). His application was approved on November 1,2006. Inmate Brown was moved into Pre-Treatment on November 13, 2006. Inmate Brown has never been assigned to the Omnibus Crime Bill Substance Abuse Program.

The Drug Treatment Program is designed to provide a recovery oriented, resident lead, living environment. The program has a table of organization, rules, and job descriptions, referred to as structure. Violation of structure rules are recorded on a rule violation form. A Drug Treatment Counselor determines all consequences resulting from rule violations. Upon entry into the Drug Treatment Program, all inmates receive an orientation to familiarize them with the program structure.

I have not violated Inmate Brown's Constitutional Rights.



EXHIBIT

F

Affidavit – Stephanie Scott
Civil Action – 2:06-CV-1117-MEF
Page 2

_Stephanie Scott_
STEPHANIE SCOTT

SWORN TO AND SUBSCRIBED TO before me this the __8th__ day of
__February__, 2007.

_Duncattolchson_
NOTARY PUBLIC

My Commission Expires: My Commission Expires Jan 24, 2009

EXHIBIT 1 

# PRE - TREATMENT

### EASTERLING CORRECTIONAL FACILITY
### PRE – TREATMENT APPLICATION

ANNEX E

Bottom Bed Profile

YES _____ NO ___

**To:** Institutional Program Services Officer

**From:** Edward Brown _____     201344     7-A-119
        Print Name of Applicant       R/AIS #       Dorm / Bed #

**Date:** 10-20-06 _____

I hereby make application for placement in Pre-Treatment. To the best of my knowledge I meet the following minimum qualifications:

DATE ASSIGNED TO EASTERLING 04 _____ DATE ENTERED AL DOC 99

1. No major disciplinaries/citations within the past 90 days.

2. No more than (1) Behavior Citation within the past (3) months where the approved punishment is only a "Counseling / Warning" Citation. SAP Terminations / Refusal To Participate: wait 6 months

3. No negative Incident Reports within the past (3) months reflecting one or more of the following behaviors:

   –Living Agreement that shows the applicant took an active part in the argument or misunderstanding that caused the Living Agreement to be written.

   –Incidents of disrespect or argumentative behavior with any staff member even if no corrective action was taken.

SIGNATURE OF APPLICANT

REVIEWED BY CLASSIFICATION STAFF:
_____ Inmate meets the qualifications listed above.
_____ Inmate **DOES NOT** meet the qualifications listed above for placement in Pre - Treatment
because: _____
_____ Application needs to be reviewed by the Psychological Associate for determination of inmate's involvement in the incident.

SIGNATURE OF CLASSIFICATION STAFF MEMBER       10/31/06
                                        DATE REVIEW COMPLETED

REVIEWED BY PSYCHOLOGICAL ASSOCIATE FOR REFERRAL:
_____ Inmate meets the qualifications based upon my review of the incidents(s) in question.
_____ Inmate **DOES NOT** meet the qualification based upon my review of the incident(s) in question.

ACTION BY INSTITUTIONAL PROGRAM SERVICES OFFICER:
_____ Inmate is approved for placement in the Pre-Treatment Program. Send approved application to ICS.

_____ Inmate **DOES NOT** meet the qualifications for approval and placement in the Pre-Treatment Program. (Send disapproved application back to the inmate with one (1) copy retained.)

SIGNATURE OF PROGRAM SERVICE OFFICER/COUNSELOR       11/1/06
                                             DATE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWARD BROWN EL, #201344          )
    Plaintiff,                )
                              )
    VS.                       )
                              )    CASE NO. 2:06-CV-1117-MEF
                              )
KENNETH SCONYERS, CAPTAIN, et.al.  )
    Defendant (s)              )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Brian Mitchell</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Brian Mitchell</u>, and I am presently employed as <u>Psychological Associate II</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On June 19, 2006, I attended the Progress Review of inmate Edward Brown, ASI# 201344R, in my official capacity as Psychological Associate II for Easterling Correctional Facility. The Progress Review stated that inmate Brown had completed an 8 week Substance Abuse Program at Staton Correctional Facility in June 0f 2000. I signed the Progress Review in agreement with the Classification recommendation and recommended that inmate Brown participate in AA/NA meetings (Exhibit A).

I do not have control over the inmate population. I do not have control over the number of security personnel.

I have not violated Inmate Brown's Constitutional Rights.

_Brian Mitchell_
BRIAN MITCHELL

SWORN TO AND SUBSCRIBED TO before me this the _2 tb_ day of
_February_, 2007.

_Charles D. White_
NOTARY PUBLIC

My Commission Expires: __My Commission Expires Jan. 24, 2009__

EXHIBIT
6
PENGAD 800-631-6989

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM -    JUNE    16, 2006
========================================= (COU122) =========================================
AIS #: 00201344R  -  SSN: 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  RACE/SEX: B/M    DATE OF BIRTH: 01/18/1982
NAME: BROWN, EDWARD ELIJAH     ...     CUSTODY:   MED9  SECURITY LEVEL: 4
INST: EASTERLING CORRECTIONAL CENT     TIME SRVD: 08Y01M25 LAST DISC: 10 12 2005
CRME: ROBBERY I                        MIN REL DT: 04/20/2018 ACTIVE DET:  0

DISC: THEFT/DAMAGE/DESTRUCT. OF OTHE PRL CONS:   12/01/2007 EDUCAT LEV: 07

WL/PGM:_____**CAN DETAIL**_____     PRIM OCCUP:LABORER - WRECKING,CONSTRUCTIO

RECOMMENDED INSTITUTION: **EASTERLING**_____     RECOMMENDED CUSTODY:_**MED**__

JUSTIFICATION: Annual Review. Restricted offender serving a 20 year term for Robbery I.

Subj. & accomplices kidnapped female victim @ gunpoint, drove the victim's vehicle, & stole

the victim's purse. PSI available. Criminal record includes a 1998/Burglary III (YOA). No

detainers noted. Per intake subj. has a 1997/Resisting arrest. Substance abuser w/ 06/2000 8

Week SAP completion @ Staton. Currently has no consistent AA/NA attendance.

Recommend no changes in custody due to restricted status. Remain @ Easterling for

program participation/completion.

_____

_____

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:                    APP. S/L:____
_Tyrone X. Baugh_  06-19-06          _____  6/19/06
CLASSIFICATION SPECIALIST    DATE      WARDEN OR DESIGNEE    DATE
_____  6-19-06                  _____  6/23/06
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.  DATE   CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

____ APPROVED ____ DENIED; DIVERTED TO: _____  REASONS: _____

_____        _____

                                                CRB MEMBER          DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____  REASONS: _____

_____        _____

                                                CRB MEMBER          DATE

____ APPROVED ____ DENIED; DIVERTED TO: _____  REASONS: _____

_____        _____

                                                CRB MEMBER          DATE

FINAL DECISION: INST _____ CUSTODY _No Change_ DATE _6/23/06_

DATE INMATE INFORMED: _____ INMATE'S SIGNATURE: X_Edward Brown #201344_
        LAST ACTION:_06/0SPR_  REL. _Islaam_  DNA: 10/99  SKILLS: _General Laborer @ RCC_

_Psychmeds; NO_

_Diabetic; NO_



State of Alabama

# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130



**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

December 17, 2004

ADMINISTRATIVE REGULATION          OPR:  PROGRAMS SERVICES
NUMBER                  333

## RELIGIOUS PROGRAM SERVICES

**I.    GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for recognition of religious beliefs and practices of committed offenders.

**II.    POLICY**

The ADOC has the policy to permit offenders the privilege/right to worship their declared faith and to identify activities and practices most commonly approved.

**III.    DEFINITION (S) AND ACRONYM (S)**

    A.    Approved free-world sponsor(s):  An organization that has been approved through the Chaplain and the Warden to bring in ministry items for Chaplaincy ministries and religious programs and food for a specific religious celebration.

    B.    PMOD:  Prisoner Money On Deposit.

    C.    Religious Activities Review Committee (RARC):  This committee consists of the Deputy Commissioner of Programs (Chair Person), the Chaplaincy Program Coordinator, and four senior regional Chaplains.

**IV.    RESPONSIBILITIES**

    A.    The Departmental Chaplaincy Coordinator is responsible for:

        1.    Serving as a liaison with outside offices and agencies for faith-based treatment initiatives.



EXHIBIT

**H**

    2.    Program planning and administration of the chaplaincy division.

    3.    Developing departmental and community resources to meet the needs of inmates within the ADOC.

    4.    Developing policy recommendations for executive level review.

B.    The Regional Senior Chaplains are responsible for:

    1.    Participating on the RARC to review, research, and vote on religious requests submitted by ADOC inmates.

    2.    Providing advice, technical support, and serving as a resource, and liaison for Institutional Chaplains and volunteers within their region.

C.    The Chaplain is responsible for:

    1.    Publishing the institutional religious activities schedule.

    2.    Overseeing all religious activities in the institution.

D.    The Warden is responsible for:

    1.    Approving all religious activities.

    2.    Approving all free-world sponsor(s).

## V. PROCEDURES

A.    The following religious celebrations, by religious groups, and dates are approved to be conducted within the ADOC institutions.

**NOTE:  There are no work proscriptions noted for the following religious celebrations.**

1.    **Buddhism**

Buddhist are only allowed solo study only with a picture of Buddha, prayer oil, incense and incense holder, prayer beads, books, and study materials; all of the religious items are used according to the approval of the Chaplain and Warden of the institution.  These items will be stored in the Chaplain's office and be used at the assigned area for them.

AR 333 – December 17, 2004

| 2. | **Catholics** | **Date** |
|----|---------------|----------|
|    | Ash Wednesday | Date varies, confer with the Chaplain |
|    | Good Friday | Date varies, confer with the Chaplain |
|    | Easter | Date varies, confer with the Chaplain |
|    | Christmas | December 25 |

| 3. | **Five Percent Nation of Islam** | **Date** |
|----|----------------------------------|----------|
|    | Birth of Founder (Clarence 13X-Allah) | February 22 |
|    | Death of Founder | June 13 |
|    | Monthly Parliament | Last Sunday of each month |

NOTE: Neither the Moorish Science Temple nor the Five Percent Nation of Islam are obligated to fast, their fasting is voluntary. If the Moorish Science Temple or Five Percenters request to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups. No individual or group will be allowed to participate in more than one fasting period a year.

4. **Jehovah's Witness**

The Lord's Evening Meal, a communion service celebrated on Nissan 14, usually in late March or April. Chaplains will confirm the date.

| 5. | **Judaism** | **Date** |
|----|-------------|----------|
|    | Rosh Hashanah --New Year | A separate calendar is used and the Chaplain will confirm the dates with a Rabbi. |
|    | Yom Kippur | Day of Atonement |
|    | Sukkoth | Feast of Tabernacles |
|    | Simchat Torah | Season of Our Rejoicing |
|    | Pesach | Passover |
|    | Shavout/Pentecost | Second Pilgrimage Festival |
|    | Chanukah | Feast of Dedication |

| 6. | **Moorish Science Temple of America (MSTA/Moors)** | **Date** |
|----|----------------------------------------------------|----------|
|    | Noble Drew Ali's Birthday | January 8 |
|    | Moorish New Year | January 15 |

AR 333 – December 17, 2004

They believe that Friday is a Holy Day for all Muslims.

NOTE:  Neither the Moorish Science Temple nor the Five Percent Nation of Islam are obligated to fast, their fasting is voluntary.  If the Moorish Science Temple or Five Percenters request to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups.  No individual or group will be allowed to participate in more than one fasting period a year.

| 7. | **Nation of Islam (NOI)** | **Date** |
|---|---|---|
| | Observe Ramadan | Date varies, confer with Chaplain |
| | Savior's Day | February 26 |
| | Birthday of Elijah Muhammad | October 7 |
| | Day of Atonement | October 16 |

| 8. | **Native American** | **Date** |
|---|---|---|
| | Spring and Fall Equinoxes | Date varies, confer with the Chaplain |
| | American Indian Day | September 24 and 25 |
| | Winter and Summer Solstices | Date varies, confer with the Chaplain |
| | Green Corn Ceremony/ Harvest Moon Festival | Usually the third Sunday of October.  Confer with the Chaplain |

| 9. | **Protestants** | **Date** |
|---|---|---|
| | Good Friday | Date varies, confer with the Chaplain |
| | Easter | Date varies, confer with the Chaplain |
| | Christmas | December 25 |

**10.    Seventh-Day-Adventist**

The Weekly Sabbath is celebrated from sundown Friday to sundown Saturday during Sabbath hours.

| 11. | **Sunni  Muslims** | **Date** |
|---|---|---|
| | Ramadan begins | Date varies, confer with the Chaplain. |

AR 333 – December 17, 2004

| | |
|---|---|
| Eid-ul-Fitr (Feast of breaking Fast) | Date varies, confer with the Chaplain. |
| Eid-ul-Adha (Feast of Sacrifice) | Date varies, confer with the Chaplain. |

Friday Jum'ah services

NOTE 1: The Eid-ul-Adha (Feast of Sacrifice) is the second of only two religious festivals required for Sunni Muslims. It concludes with annual pilgrimage to Mecca and emphasizes prayer and the value of sacrifice. It falls on the tenth month of Dhul-Hijjah, approximately two-and-a-half months after "Eid-ul-Fitr," rotating clockwise around the year and occurring twelve days earlier annually, as do all dates. The Chaplain will notify appropriate personnel of these respective dates.

NOTE 2: Inmates who are eligible to participate and are approved to participate in the "Feast of Sacrifice" may be allowed access to the dinning hall after the rest of the population has eaten. Free-world food will not be allowed for this particular festival.

NOTE 3: Neither the Moorish Science Temple nor the Five Percent Nation of Islam is obligated to fast; their fasting is voluntary. If the Moorish Science Temple or Five Percent Nation of Islam requests to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups. No individual or group will be allowed to participate in more than one fasting period a year.

| 12. Wiccan | Date |
|---|---|
| Samhain | October 31 |

    Candles: black and orange
    Stones: onyx or obsidian
    Carved gourd (pumpkin, turnip, or small gourd)/jack-o-lantern
    Ancestor's feast

| Yule (Winter Solstice) | December 21 |
|---|---|

    Candles: red and green
    Stones: quartz crystal
    Foods: approved nuts
    Fragrant evergreens of rosemary and cedar, strings of dried rosebuds and cinnamon sticks to adorn the altar

| Imbolic | February 2 |
|---|---|

    Candles: yellow and white
    Stones: Amethyst

| Ostara (Spring Equinox) | March 21 |
|---|---|

    Candles: Pink (God) and Green (Goddess)
    Stones: Rose Quartz (God) and Moonstone (Goddess)

AR 333 – December 17, 2004

Dandelions to decorate the altar
Plastic egg (green) – represents the earth.

Beltane                         April 30

    Candles: Red (God) and Green (Goddess)
    Stones: Heliotrope or Bloodstone
    Roses to decorate the altar, along with flowers and green
    Branches
    May basket: resembles an Easter basket and will contain
    roses
    May pole: No more than two feet long
    Four lengths of ribbon (2 red, 2 white)

Litha (Summer/Midsummer)    June 22 (varies)

    Candles: 1 blue and 1 green
    Stones: Tiger's Eye or Lapis Lazuli

Lughnasadh                August 2

    Candles: 1 orange and 1 green
    Stones: Citrine and Peridot
    Libation: Instant Oatmeal (to be eaten and given as an
    offering); one ear of corn (to be burned as offering) to be
                    eaten and given as a part of
                    the religious ceremony

Mabon (Fall Equinox)        September 21

    Candles: deep gold and violet
    Stones: Amethyst
    Herbs: cedar

B.    Religious celebrations where food is required.

An "approved free-world sponsor(s)" will be responsible for submitting a
dinner menu to the Chaplain at least 20 days prior to the date of the
celebration. The free-world sponsor(s) must plan the dinner menu to
accommodate the number of inmates attending the religious celebration.
The Warden shall review and approve the dinner menu. If an approved
free-world sponsor cannot be found, the inmates shall be fed from the
regular dinner menu.

C.    The following religious events and religious celebrations have been given
permission to have food brought into the institution by free-world
sponsor(s):

1.    Kairos Events. Four times each year, usually once each quarter,
and is open to all inmate groups.

2.    Ramadhan Eid Feast. The Festival of Fast – Breaking at the
conclusion of Ramadhan. This ceremony is for traditional
Muslims, but other Muslim groups may participate (q.v. Moorish
Science Temple and Nation of Islam).

AR 333 – December 17, 2004

3.    <u>Harvest Moon Festival</u>. A period of "thanksgiving and celebration" for Native Americans, usually on the third Sunday of October.

4.    <u>Jewish Passover</u>.  This festival is the best known of all Jewish festivals, recalling the deliverance of the people of Israel from slaves in Egypt. It takes place on the first evening of the Passover.

5.    <u>Samhain</u>. This celebration includes a major feast on October 31.

6.    For smaller religious sects like the Muslims and the Native Americans, among others, where free-world sponsors may be limited, inmates may draw from their PMOD accounts for their "approved sponsors" to purchase food. If sponsors cannot be found to facilitate the religious celebration, the group will be fed from the regular menu and have access to the dinning hall after the rest of the population has eaten.

**D.**    Approved Religious Practices and Activities

NOTE: These practices are based on surveys of religious literature, consultations with experts in the field, current practices already being observed in the ADOC, and a review of Alabama court orders. Only one religious item of any kind is allowed (e.g. only one drum, one medallion, one religious cap).

1.    <u>Medallions</u>:  This practice was officially mandated by Victor D. Ayler-Bey v. Jones, court order in May of 1994. The "Moorish Science Temple will, during the Friday services, be allowed to wear medallions."

a.    To be consistently applied, it is recommended that medallions be allowed at all times for religious groups.

b.    All medallions will be worn on a breakable string only and should be no more than one and one-half inch in diameter.

c.    Medallions may be constructed of metal, wood, plastic or leather, and inexpensive (costs no more than $25.00).

d.    The ADOC will permit inmates to wear colored medallions if they are made of wood, plastic or leather for use in religious practices.

e.    The ADOC will require that such items may not be worn, shown, or displayed anywhere other than the designated place of worship.

AR 333 – December 17, 2004

  f. These items will be concealed at all times under the inmate's shirt or kept in the inmate's personal possession.

  g. Outer display of religious medallions is permitted but only during services.

2. <u>Fezzes, Koofies, and Yarmulke</u>: The practice of wearing religious caps was mandated by Carl Hall v. Oliver court order in March 1982, and then reaffirmed in Victor D. Ayler-Bey v. Jones court order of May 1994. They may be allowed during religious services only and may be colored, to include the red fezz for the Moorish Science Temple.

3. <u>Prayer Oils</u>: The practice of using prayer oils was mandated by the Victor D. Ayler-Bey v. Jones court order of May 1994, and should be allowed only during religious services. Personal possession is not allowed.

4. <u>Incense Burning</u>: This practice was mandated by the Carl Hall v. Oliver court order in March 1982, and then reaffirmed in the Victor D. Ayler-Bey v. Jones court order of May 1994. This practice should be allowed.

5. <u>Prayer Beads</u>:  Muslim prayer beads are analogous to the Catholic rosary (an allowed practice) and are used to remember the names of Allah. Native American beadwork is important as a way of identifying with nature. It is recommended that these three groups be allowed to wear a small colored string of beads during religious services only, which will easily break away if pulled or grabbed, but only during religious services.

6. <u>Prayer Rugs</u>:  Muslims should be allowed to have a small prayer rug for their five daily prayers. Prayer rugs should be the approximate size of two feet by three feet. They may be colored.

7. <u>Religious Space:</u>  There is a right to collective assembly for approved religious groups. Court decisions emphasize, however, that the group's size does have a bearing on the amount and frequency of space provided e.g. a small group does not have the right to occupy an entire chapel).

8. <u>Prayer Shawl (Tilith)</u>:  The size of the prayer shawl for Jewish Services should be approximately 18" wide by 70" long. It may be colored and is worn during religious services only.

9. <u>Religious literature, religious audios, DVDs, VCR tapes or videocassettes</u>:  Any religious literature, audio, DVD, VCR tape or videocassette that contain any material that is racially offensive or

AR 333 – December 17, 2004

causing a security problem or conflict will not be allowed. ADOC will determine if media materials poses a legitimate security threat to the security of the prison on a case-by-case basis. Chaplains will also ensure that there are no copyright/royalty infringements by following protocols established by the Chaplaincy Coordinator and the Legal Division.

10. <u>Fire (for use in Native American Ceremonies)</u>: A small fire is only permitted for Native American Ceremonies at a designated place, in the area of the outside Sacred Ground. Fire will only be permitted at this appropriate place. The Chaplain and security personnel will ensure that the fire does not violate any fire safety codes, is small, and safe.

    a.    Fire is regarded as a sacred gift from the Creator, primarily because it warms, purifies, and illuminates, and without it mankind would perish.

    b.    In Native American belief, fire is important because it has the ability to carry prayers, calm the inner-self, and unite all around it to be one people.

11. <u>Wine</u>: One ounce of wine will be allowed to be brought into the institution by the priest to be used in the Eucharist celebration. Only the priest will partake of the wine. Inmates will be prohibited from the partaking of wine.

12. <u>Islamic Turbah</u>: Islamic inmates, who are Shiite, may use a small clay tablet for prayer purposes, called a turbah.

13. <u>Native American/Dream Catchers</u>: The Native American Dream Catcher is a small circular item, usually made of leather, with feathers hanging from the circle. It "catches impure thoughts that come to Native Americans in their sleep".

    a.    The Religious Activity Review Committee has approved this item, and has agreed that it can be hung from the inmate's bed during the hours he is asleep.

    b.    It should be maintained with the inmate's personal property at all other times.

14. <u>Oils</u>: The following types of oils have be approved by the Religious Activities Review Committee to be ordered for Islamic inmates:

    a.    African Musk

AR 333 – December 17, 2004

      b.     Black Coconut

      c.     Black Madina Musk

      d.     Blue Nile

      e.     China Musk

      f.     Egyptian Musk

      g.     Frankincense

      h.     Myrrh

      i.     Nubian Musk

      j.     Sandalwood

E.    Native American Beliefs and Practices

    1.    <u>Medicine Bag</u>:  The term "Medicine Bag" shall include any object attached to the bag and the string to which it is attached.

      a.     Native American inmates shall be allowed to have a personal medicine bag to be kept on their person or in their personal property box.  When worn outside the ceremonial grounds, it will be worn underneath their prison clothing.

      b.     The ADOC shall permit the outside of the medicine bag to be adorned with colored beads as well as beads which are white or black.  Beads greater in size than approximately eight millimeters in diameter (the size of a "pony" bead) are **not** permitted.

      c.     Inmates shall be allowed to affix items such as claws, beads, stag buttons, and pieces of antlers to their medicine bags with the following restrictions:

          1)   Claws shall be no longer than one and one-half inches in length from tip to tip.

          2)   Stag buttons shall be no longer than one and one-half inch in diameter.

          3)   Arrowheads shall be no larger than one and one-half inch in length.

AR 333 – December 17, 2004

    4) Antler pieces shall be no longer than one and one-half inch long and may not be sharp at the tip.

d. Antlers, claws, and arrowheads must be permanently affixed to the Native American inmate's medicine bag or contained within the medicine bag itself.

e. Medicine bags that do not exceed 4" X 4" in size are permitted.

f. If the medicine bag is strung from the inmate's neck, it is to be attached with a natural or neutral color leather string or shoelace. This string must be breakable for the inmate's safety in the event it is jerked or snatched from the neck.

g. All medicine bags shall be inspected in a proper manner by correctional offices when the inmate is either entering or exiting a correctional institution and at any time a correctional officer has reasonable cause to believe that it conceals contraband, and/or items that could be used as a weapon, are concealed in the medicine bag.

h. In the event that a return dispute of a specific medicine bag occurs, the inmate retains the right to petition the court for its return.

2. Contents of Medicine Bag: Native American inmates shall be allowed to keep inside their medicine bag all objects, which have a religious significance to the practitioner, including, but not limited to, small stones, sand or dirt, feathers, beads, except those items that are otherwise prohibited within this regulation. Upon reasonable cause and when requested by a correctional officer, a Native American inmate will display all objects in the medicine bag, allowing a visual inspection of the inside area/space/part/portion of the medicine bag.

3. Vegetation: ADOC officials shall permit vegetation to be grown on the Native American ceremonial grounds.

a. The inmates shall be allowed to plant and maintain a tree of life, preferably cedar.

b. Native American inmates shall be allowed to grow and maintain on the ceremonial grounds:

    1) One variety of corn and up to eight stalks planted at least one foot apart.

AR 333 – December 17, 2004

      2) One variety of bean and up to eight plants planted at least one foot apart.

      3) One variety of squash and up to eight plants planted at least three feet apart

c.   Flowers and gourds shall also be grown by the Native American inmates on the ceremonial grounds for ceremonial purposes.

d.   Vegetation, other than the tree of life or any existing trees of life, shall not be permitted to grow to a height greater than four and one-half feet and shall be planted in such a manner as to not obstruct the view of correctional officers, not within ten feet of any perimeter fence of the correctional institution, nor cause any type of fire hazard to any prison building or areas of the yard.

4.   <u>Access and Time Allowed on Ceremonial Grounds</u>: Native American inmates shall be allowed access to the ceremonial grounds when the prison yard is open. Additionally, when the prison yard is not open, Native American inmates shall have access to the ceremonial grounds if the chapel is open or during "chapel call", but not after sunset. Factors that may be considered regarding additional access to the ceremonial grounds are the level of security of the institution, the number of Native American inmates who will use the ceremonial grounds, and the physical structure of the institution.

5.   <u>Size of Ceremonial Grounds</u>: Native American inmates shall be allowed to have and maintain a ceremonial ground at each institution where Native American inmates are incarcerated. The size and location of the ceremonial grounds is to be determined by factors such as: the specific institution, the availability of space, the level of security, and the number of Native American inmates wanting to use said ceremonial grounds. All ceremonial grounds shall be a minimum of 20'X20'.

6.   <u>Location of Ceremonial Grounds</u>: Any correctional institution, which has Native American inmates, shall have an area designated for use by them as ceremonial grounds. Factors for determining the exact location of the grounds are as follows: Judgment of ADOC officials for the most appropriate place for the ceremonial grounds, the security level of the institution, the normal operation of the institution, and flow of inmate traffic at the institution.

7.   <u>Medicine Wheel</u>: Native American inmates shall be allowed to maintain a medicine wheel, comprised of stones, upon the ceremonial grounds. The size of the medicine wheel will be

AR 333 – December 17, 2004

dictated by the amount of space available for the ceremonial grounds at each institution and the number of Native American inmates that will use it.

8.   Provisions of Storage Space:  The ADOC shall permit the Native American groups at each institution to place a box on or adjacent to the ceremonial grounds in which religious items are kept. The box shall be secured by a combination lock. Native American inmates and the appropriate ADOC officials shall maintain the combination to this lock.

9.   Feathers:  The ADOC shall not prohibit Native American inmates from possessing feathers for religious and ceremonial use. Feathers must be kept in their personal property box or at their bed. The ADOC shall not prohibit the use of feathers on the ceremonial grounds or in the areas used for Native American activities. Practitioners shall be allowed to keep, in their possession at all times, personal prayer fans for use on the ceremonial grounds.

10.  Moccasins:  The ADOC shall not prohibit Native American inmates from wearing moccasins while on the ceremonial grounds. According to the ADOC discretion, moccasins may be kept with the inmate's personal possessions, on the ceremonial grounds, or with the Chaplain.

11.  Prayer Pipes:  Native American inmates shall be allowed to keep a personal prayer pipe. In addition to a personal prayer pipe, a congregant prayer pipe will also be kept by the designated "pipe keeper." The personal prayer pipe will only be used while on the ceremonial grounds. The ADOC will permit inmates, according to each inmate's personal preference, to keep the pipes with other personal religious items at the ceremonial grounds, an area specifically provided for Native American activities, or with the Chaplain. Nothing prohibits a correctional officer or ADOC official from visually inspecting a prayer pipe, when there is reasonable cause to inspect the pipe, in the manner set forth in this regulation for the inspection of medicine bags and prayer pipes.

12.  Herbs:  The ADOC shall permit Native American inmates to purchase the following herbs through the Chaplain's office: Sage, Sweetgrass, Cedar, Kinnikinick, and Tobacco. All herbs, except tobacco, are to be maintained and kept by the Chaplain or in the Shift Commander's office.

13.  Drums and Rattles:  The ADOC shall permit Native American inmates to have drums and rattles for use during ceremonies held on the ceremonial grounds. These items will be maintained and kept either on the ceremonial grounds or with the Chaplain. These

AR 333 – December 17, 2004

items will not be used in a manner that disrupts the normal operation of the correctional institution.

14. Ceremonial Items: The ADOC shall permit inmates to possess colored ceremonial items, such as armbands, chokers, and headbands for use in religious practice. The ADOC prohibits wearing, showing, or outer display of such items anywhere except the ceremonial grounds or in the area specifically provided for Native American activities, and only then for the purpose of practicing Native American spirituality. The ADOC shall require these items to be kept on the ceremonial grounds.

15. Ceremonial Days: The ADOC shall permit inmates to celebrate the following sacred days: American Indian Days, the Green Corn Ceremony, the Harvest Moon Ceremony, the Winter and Summer Solstices, and the Spring and Fall Equinoxes. The ADOC shall require Native American inmates to notify the Chaplain or Warden/designee twenty days prior to the observance of sacred days. The ADOC may impose the same work proscriptions on Native American sacred days as work proscriptions observed by the Department for recognized sacred days of other religions.

16. Publications/Literature: The ADOC shall impose no proscriptions on the cultural and spiritual literature allowed to the Native American inmates and shall not require inmates to purchase literature in a particular month of the year. Cultural and spiritual literature shall be evaluated by the ADOC on a case-by-case basis to determine if it poses a legitimate threat to the security of the prison. This literature shall be obtained through the channels and procedures set forth in the applicable regulations compatible with this provision. Nothing in this regulation obligates the ADOC to grant rights to Native American inmates who adhere to other recognized religions.

17. Purchase of Items: The ADOC shall impose no proscriptions on ordering religious items by the Native American inmates, provided such items do not constitute a legitimate threat to security. Such items shall be obtained through the channels and procedures set forth in the applicable regulations compatible with this provision.

18. Training of Correctional Officers on Inspections: ADOC officials shall be taught the proper procedures for inspecting and viewing all Native American items. Specifically, the ADOC shall train its personnel not to touch the medicine bags or sacred pipes of the Native American inmates. Should an officer believe that it is necessary to inspect the contents of a Native American's medicine bag or sacred pipe, the officer shall bring the inmate to the Chaplain's office where the contents of the bag or the pipe can be

AR 333 – December 17, 2004

visually inspected. In the event that the Chaplain is not present, the inspection may be performed in the presence of the Shift Commander.

19. <u>Retention of Religious Items on Transfer</u>:  The ADOC shall permit inmates to keep and retain their religious items during their transfer from one institution to another.  When an inmate is transferred, he/she shall be given access to the ceremonial grounds to retrieve his/her religious items.

20. <u>Sacred Item Box</u>:  The ADOC shall not prohibit Native American inmates from maintaining a sacred item box in their personal possession so long as the size of such box allows it to be kept within the inmate's locker box or personal possessions.

21. <u>Right to Petition</u>:  The religious and ceremonial items, which were previously possessed by an inmate and do not violate the provisions set forth in this regulation or ADOC policy, shall be returned.  In the event that a dispute arises as to the return of specific items of an inmate, he/she retains the right to petition the Court for his/her item.

22. <u>Personal Prayer Book</u>:  The ADOC shall permit Native American inmates to possess personal prayer books and shall permit them to keep such books covered with a natural material such as leather or fir so long as the covers slip off easily for review and inspection by correctional personnel.

23. <u>Talking Stick</u>:  The ADOC shall permit Native American inmates to maintain and store a talking stick no larger than two feet long and one inch in diameter on the ceremonial grounds of each prison.

F.    Sweat Lodge Ceremony

1. <u>Sweat Lodge Structure</u>:  The lodge is usually a dome-shaped structure made of willow or other saplings indigenous to the area.  The saplings are lashed together with twine or bark..  The structure is then covered with a tarpaulin, blankets, or canvas to make it light proof.  The Warden, upon the recommendation of the Chaplain and spiritual advisor, shall determine the size of the sweat lodge.  Generally the dome of the sweat lodge should be approximately 4 feet in height by 12 feet in diameter.  The sweat lodge may be a prefabricated, temporary structure.

2. <u>Sacred Altar</u>:  A small earthen mound is built as a sacred altar outside the lodge, using the dirt from the inside fire pit.

AR 333 – December 17, 2004

3.  <u>Outside Fire Pit</u>:  Beyond the sacred altar is a fire pit for heating rocks.  The fire pit should not exceed an area 3 feet in diameter.

4.  <u>Inside Fire Pit</u>:  A pit dug inside the sweat lodge where hot rocks are placed with a shovel or rake for the production of steam.  This inside fire pit should not exceed an area 3 feet in diameter.  A container of water is required to sprinkle on the hot rocks to produce the steam and heat.  A fire suppression system such as a hose, fire extinguisher, or extra buckets of water will be required in case the fire gets out of control.

5.  <u>Barrier Around Area</u>:  The Warden should designate an area to preserve the sacredness of the lodge, altar, and fire pit that should be roped off.  In those institutions designated to conduct a sweat ceremony, the area for the sweat ceremony and the Native American ceremonial ground should be approximately 40 feet x 40 feet, space permitting.

6.  <u>Sacred (Ceremonial) Pipe</u>:  The sacred pipe is often used during the sweat lodge ceremony.

7.  <u>Sweat Schedule</u>:  Sweats will be conducted four times a year during the Spring and Fall equinoxes and the Winter and Summer solstices.  The spiritual advisor and Chaplain will determine the respective time frames for the sweats, with the Warden's approval.  The duration of the ceremony from the time of the fire to the actual sweat should not exceed 4 hours; 2 hours to heat the rocks and 2 hours for the sweat ceremony.

8.  <u>Institutional Counts</u>:

    a.  During a <u>formal</u> count, and at times when a sweat lodge ceremony is in progress, the correctional officers should respectfully notify inmates of the count.  The correctional officials will open the flap/door for the count.  If the Warden or designee deems it appropriate, the inmates will be ordered to return to their assigned beds for a lock-down count.

    b.  Upon occasion, while a sweat lodge ceremony is in progress, it will be necessary for a correctional official to conduct an <u>informal</u> inmate count to ensure that all inmates under his/her supervision are accounted for.  The correctional official should respectfully notify inmates of the count.  The correctional official will open the flap/door for the count.

AR 333 – December 17, 2004

c. Upon occasions, it is necessary to conduct an emergency inmate count while a sweat lodge ceremony is in progress. The Warden/designee will order an emergency count and all inmates will be returned to their assigned beds. The correctional official will open the flap/door and order the inmates to return to their assigned beds.

9. Clothing/Attire: Inmates participating in sweat ceremonies are required to wear appropriate outerwear, such as prison uniforms or T-shirt and shorts approved by the Warden.

10. Wood and Rocks for the fire: The designated institutions should collect these materials. The spiritual advisor with the Warden's approval shall determine the type of rocks used. The number of rocks used should not exceed twenty-eight in numbers and should be no greater than six inches in diameter.

11. Participation: Participating in the sweat lodge is limited to those inmates who declare Native American Spirituality, by their own choice. Without approval of the Warden, no more than five inmates may enter the sweat lodge at one time. The Warden shall allow a sufficient number of sweat ceremonies in connection with the Spring and Fall equinoxes and the Winter and Summer solstices so that each inmate meeting the participation requirements of this paragraph has the opportunity to participate in the ceremony.

12. Spiritual Advisor: A designated free-world representative will be the spiritual advisor for facilitating the sweat lodge ceremony. The spiritual advisor shall be someone with knowledge of the sweat ceremony and a sincere desire to assist the Native American inmates. The advisor will collaborate with the Warden and Chaplain on proper procedures for establishing/construction of the sweat lodge, and will be responsible for conducting or facilitating the sweat lodge ceremony. If a spiritual advisor is not available to conduct a sweat lodge ceremony, then the ceremony will be conducted by an inmate approved by the Warden who will consult with the Chaplain and/or spiritual advisor.

13. Sweat Lodge Institutions: The ADOC will designate four institutions to contain a Sweat Lodge Structure. These institutions will include (1) one maximum-security institution, (2) two medium-security institutions, and (1) one minimum-security institution. The provisions of the ceremony at these institutions shall be administered to meet the needs of the inmate population and at the discretion of the Commissioner/designee. The ADOC will follow the classification procedures to allow Native American

AR 333 – December 17, 2004

inmates who desire to participate in sweat ceremonies to transfer to a designated institution.

G.     Parameters for the Practice of the Wiccan Religion

1.     Place:

   a.     The place will be outside and consist of a circle.

   b.     The Warden, based on the Chaplain's recommendations, will designate the place.

   c.     The only inmates allowed at that place will be identified as serious practitioners who have studied Wiccan belief and practices.

2.     Ritual:

   a.     There are eight recognized Sabbats.

   b.     Each individual must make a written request to the Chaplain or Warden well in advance to set up the Ritual they desire to conduct.

   c.     An inmate must make a written request to celebrate a holy day at least two weeks in advance.

3.     Solo Study:  Solo studies or group activities are based on religious needs, as determined by the Chaplain or Warden.

   a.     Approved outside rituals and activities only.

   b.     The only exception would be single or group studies inside by the approval of the Chaplain or Warden.

   c.     Inside at bunks, prayer and literature activities that are reasonable, does not disturb anyone else, and is not a security violation, not encroaching on the orderly function of the dorm or cell area.

4.     Religious Practices:

   a.     Wiccans meet in sacred circles where rituals are held.

   b.     The area to cast circle (reasonable) will be determined by the Warden and the Chaplain.

   c.     Required daily observance:

AR 333 – December 17, 2004

    1) No universal standard across traditions
    2) Personal prayer such as:

        a) Greeting the day
        b) Prayer before meals
        c) Prayer to close the day

d.    Required weekly observance

    1) No universal standard
    2) Approved space on yard

        a) Go to the approved area
        b) At the approved scheduled time
        c) Box for religious items approved by the Warden
        d) Allow a small tree in a pot 24 inches or less in height

        a) Approved inside space during inclement weather for study and review of tapes and literature only.

5.    <u>Religious Items:</u>

a.    Personal religious items

    1) Book of shadows
    2) A spiritual journal
    3) This will include all rituals
    4) All rituals will be screened and reviewed by the Chaplain or Warden/designee before used
    5) A copy will be kept by the area review Chaplain

b.    Divinations tools

    1) Tarot cards
    2) Runes or picture
    3) Items to honor the elements of nature

        a) Salt-earth (un-iodized only)
        b) Feather-air
        c) Approved herbs-air
        d) Wood wand-fire
        e) Water-water
        f) Picture of divine unity-center

    4) Religious medallion, usually a pentacle on a breakable string.

AR 333 – December 17, 2004

c.    Congregate religious items:

1) Altar - cardboard box
2) Altar cloth
3) Bell - very small
4) Book of Shadows*
5) Candles – used outside (various colors may be used)
6) Chalice – plastic
7) Drums
8) Herbs (sage, cedar, lavender only)
9) Incenses
10) Pentacle*
11) Rattle
12) Tarot cards or picture runes on paper*
13) Salt (Un-iodized)
14) Dowel sticks to be used as a magic wand* (no larger than 12 inches in length and no thicker than a pencil and will be made from an all natural substance such as an apple blossom branch)
15) Libation dish for indoor worship
16) Scented anointing oils stored with the Chaplain (lavender, myrrh, frankincense only)
17) Feathers and feather fan
18) Abalone shell
19) Two icons (a small statue or picture of a goddess and god)
20) Small cauldron no bigger than one foot in height and diameter
21) Two non-glass dishes for salt and earth, at least three inches in diameter
22) Small scissors with rounded ends to cut paper and herbs (checked out from the Chaplain)
23) Clear barreled pens and paper*
24) Several semi-precious crystals, including quartz (stones are to be approved by the Warden)
25) Sacred items box  approved by the Warden
26) Tea purchased from the canteen.
27) Talisman bag not larger than 4" x 4"*
28) Teas which can be purchased from the canteen

Note: The asterisk (*) symbol indicates that the inmate may have these items in their personal possession.

6.    Requirements for membership:

a.    Decision to follow the Wiccan path

     b.    Self-initiation

     c.    Group as determined need

     d.    Wiccan volunteer/sponsor

         1)  Self-choice
         2)  Acceptance by the group leadership and general
         3)  Theology (Chaplains will have a permanent copy of the list or information on theology)

     e.    No universal dietary standard exist for Wicca (self-selection from the main cafeteria)

     f.    No universally recognized sacred writings exist for Wicca

7.    <u>Divination Tools</u>:

     a.    Tarot cards

     b.    Rune pictures

8.    <u>Organization structure</u>:

     a.    Outside

         1)  Most are solitary practitioners
         2)  The large groups based on need (No covens)
         3)  The group leader will be called a facilitator, not high priest
         4)  There will be no priestess

     b.    Inside prison – Inmate lay leaders are permitted for a group and identified as facilitators

     c.    Wiccan activities will include:

         1)  White magic only
         2)  **NO** black magic of any kind

9.    <u>Prohibited Sects, Practices, Materials, and Tools</u>:

     a.    The ritual knives

     b.    The broadsword

     c.    No robes

AR 333 – December 17, 2004

     d.     No skyclad

     e.     No drugs

     f.     No alcohol

     g.     No scourge

H.     Guidelines for Considering Music

There is a large variety of religious music used in the various religious services of the ADOC. All music should be screened by the Chaplain and judged on content. Any content that violates the security standards of AR 303, Visitation and Correspondence Procedure, and AR 313, Chaplaincy Services and Religious Activities, or any other regulation of the ADOC will be automatic grounds for rejection of material. Music materials will be screened on a case-by-case basis.

I.     Inmates Speaking in any Religious Service

Any inmate who speaks at any religious service, large or small, must have the prior approval of the Chaplain of that institution.

J.     Religious Education Programs/Faith Based Honor Dorm Program:

     1.     Is defined as a specialized, systematic, rehabilitative, approach over and above the regular chaplaincy programs.

     2.     In the ADOC, these programs have treatment status under the directive of the chaplaincy programming.

     3.     Court ordered programs still have priority for the inmate.

     4.     These programs are based upon the inmate choosing this approach of his own free will and signing a contract for participation.

     5.     These programs are open for all to participate in.

## VI.     DISPOSITION

Any forms will be disposed of and retained according to the Departmental Records Disposition Authority.

## VII.     FORMS

There are no forms prescribed in this regulation.

AR 333 – December 17, 2004

**VIII.    SUPERCEDES**

This regulation supercedes AR 333 dated April 21, 2004.

**IX.    PERFORMANCE**

A.    Limbaugh v. Thompson, CV No. 93-D-1404-N, March 5, 1998.

B.    Victor D. Ayler-Bey v. Jones, May 1994.

C.    Carl Hall v. Oliver, March 1982.

Donal Campbell, Commissioner

AR 333 – December 17, 2004



**State of Alabama**
**Alabama Department of Corrections**



**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION
NUMBER                      403

OPR: INSTITUTIONS

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

I   **GENERAL**

A.   This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.   A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.   Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.   When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.   Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a

1 of 26

EXHIBIT

**I**

AR 403 January 30, 2003

serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II     DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.   The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.   The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.   The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.   The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.   The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.   If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III     PROCEDURE BEFORE HEARING

A.   Arrest or Charge of Inmate

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or

AR 403 January 30, 2003

charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.    Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.    Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.    Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.    Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.    Obtain Name of Witnesses Inmate wants at Hearing

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the

AR 403 January 30, 2003

witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.    Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV    PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.    Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.    Read the charges to the inmate and determine if he/she understands the charges.

C.    Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

AR 403 January 30, 2003

D.   Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.   Swear the inmate and all witnesses under oath to testify truthfully.

F.   Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.   Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.   Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.   Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.   Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.   Call the inmate into the hearing room and inform him/her of the decisions reached.

L.   If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

## V   PROCEDURES AFTER HEARING

The Hearing Officer, after the hearing will follow these procedures:

A.   Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.   Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

AR 403 January 30, 2003

C.   Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.   Complete, in the appropriate space, specifically the basis for the findings of fact.

E.   Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.   The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.   A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.   If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

   1.   At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

      a.   One copy to the Board of Pardons and Parole.

      b.   One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

      c.   Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

      d.   One copy retained in the inmate's institutional file.

   2.   At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The

AR 403 January 30, 2003

original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

VI    **MISCELLANEOUS PROVISIONS**

A.    Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.    The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.    The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.    No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.    Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.    Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has

AR 403 January 30, 2003

been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.    Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

    1.    There is no injury to staff during the incident or as a result of the violation.

    2.    No consequences arise which result in the loss or destruction of property and security of the institution.

    3.    There is no serious injury to inmates as a result of the violation or incident.

    4.    The violator is not likely to receive disciplinary segregation.

    5.    With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.    For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.    The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.    Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

## VII    SANCTIONS

A.    Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.    Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.    Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

**VIII   STANDARD OPERATING PROCEDURES**

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

**IX   APPEAL OF THE INMATE**

The inmate may not appeal the final action by the Warden or his/her designee.

**X   REFERENCE**

Administrative Regulation 414, "Behavior Citation Procedures for Informal Disciplinary Actions"

**XI   SUPERSESSION**

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.

Donal Campbell, Commissioner

**ANNEXES**

Annex A - Violations Table and Authorized Sanctions

Annex B - Definitions and Examples of Rule Violations

Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)

Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

| | |
|---|---|
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |
| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |
| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

Annex A to AR 403 (page 2 of 4)

AR 403 January 30, 2003

ALABAMA DEPARTMENT OF CORRECTIONS
VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
ANNEX A (Continued)

PARAPHERNALIA. ALSO, CONSUMPTION OR USE
OF, OR UNDER THE INFLUENCE OF ALCOHOL,
NARCOTICS, OR OTHER INTOXICANTS.

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

### MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## VIOLATIONS TABLE AND AUTHORIZED SANCTIONS
### ANNEX A (Continued)

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

### WORK RELEASE AND SIR VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

### AUTHORIZED SANCTIONS

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

Annex A to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
## ANNEX B

### VIOLATION AGAINST PERSONS

28    <u>HOMICIDE</u> - The death of a human being caused by another person's actions.

29    <u>ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC</u>- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30    <u>ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC</u> - See #29 above.

31    <u>ASSAULT ON ANOTHER INMATE</u> - See #28 or #29 above.

32    <u>SEIZING OR HOLDING HOSTAGES IN ANY MANNER</u> - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33    <u>UNLAWFULLY DETAINING ANY PERSON</u> - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34    <u>FIGHTING WITH A WEAPON</u> - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35    <u>FIGHTING WITHOUT A WEAPON</u> - Similar to #34 above except that a weapon or device used as a weapon are not present.

36    <u>SEXUAL ASSAULT (FORCIBLE)</u> - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37    <u>SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING</u> - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38    <u>INDECENT EXPOSURE/EXHIBITIONISM</u> - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39    <u>EXTORTION OR BLACKMAIL</u> - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40    <u>ROBBERY</u> - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41    <u>MAKING FALSE STATEMENTS OR CHARGES</u> –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42    <u>GATHERING IN A THREATENING OR INTIMIDATING MANNER</u> - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

44    THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

## SECURITY VIOLATIONS

45    ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46    ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47    ESCAPE WITHOUT FORCE - See #45 above, except hat there is no use of constraining power, compulsion, or force involved.

48    ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49    ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50    BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51    UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52    UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53    INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54    REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

56    FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    INSUBORDINATION - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

59    DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY - Self-explanatory.

60    BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61    DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscount of inmates within the institution.

62    INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating a situation which could cause serious impairment to the operation of    the institution, harm to individuals, or result in destruction of property.

63    DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64    POSSESSION OF CONTRABAND - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65    POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

**PROPERTY VIOLATIONS**

68    THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69    DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY - Self-explanatory.

70    UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71    ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72    FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

Annex B to AR 403 (Page 3 of 4)

AR 403 January 30, 2003

# ALABAMA DEPARTMENT OF CORRECTIONS
## DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS
### ANNEX B (Continued)

73    COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

## POLICY VIOLATIONS

78    FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86    BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

## PERSONAL VIOLATIONS

90    CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

## MISCELLANEOUS VIOLATIONS

91    CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92    AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93    VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94    SOLICITING SEXUAL ACT - Self-explanatory.

PV    VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

## WORK RELEASE AND SIR VIOLATIONS

E8    VIOLATION OF SIR CONTRACT – Self-explanatory

E9    ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

ALDOC Form 225

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1.  Inmate: _____     Custody: _____     AIS _____

2.  Facility: _____

3.  The above inmate is being charged by _____ with a violation of Rule
    Number _____ specifically _____ from regulation # _____ which
    occurred on or about _____, 20 _____ at (time) _____ (am/pm), Location:
    _____. A hearing on this charge will be held after 24 hours from
    service.

4.  Circumstances of the violation(s) are as follows: _____

    _____

    _____

    _____                    _____
             Date                                   Arresting Officer/Signature/Rank

5.  I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I
    informed inmate of his/her right to present a written or oral statement at the hearing and to present
    written questions for the witnesses on this the _____ day of _____ 20 _____ , at (time)_____
    (am/pm).

    _____                    _____
    Serving Officer/Signature/Rank                  Inmate's Signature/AIS Number

6.  Witnesses desired? NO_____        YES_____
                       Inmate's Signature            Inmate's Signature

7.  If yes, list
    _____

    _____

8.  Hearing Date_____ Time _____ Place _____

9.  Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and
    attach.

10. A finding is made that inmate (is/is not) capable of representing him/herself.

    _____
        Signature/Hearing Officer
11. Plea: _____ Not Guilty _____ Guilty

12. The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

    _____
        Signature/Hearing Officer

                                                        Annex C to AR 403 (Page 1 of 5)

                                                        AR 403 January 30, 2003

Arresting Officers testimony (at the hearing): _____

_____

_____

_____

13.  Inmate's Testimony:_____

_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony: _____

_____

_____

14.  The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

_____
Signature/Hearing Officer

15.  The following witnesses were not called - Reason not called

1. _____  _____

2. _____  _____

3. _____  _____

Annex C to AR 403 (Page 2 of 5)

AR 403 January 30, 2003

16. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

_____

17. Basis               for               Findings               of               Fact:

_____

_____

_____

_____

18. Hearing Officer's Decision: _____ Guilty _____ Not Guilty

19. Recommendation               of               Hearing               Officer:

_____

_____

_____

_____


_____          _____
Signature/Hearing Officer                Type Name and Title

20. Warden's          Action               —               Date

_____
   Approved

_____
   Disapproved

_____
   Other                                                    (Specify)

21.   Reason     if     more     than     30     calendar     days     delay     in
      action._____

      _____

22.   I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the
      above   named   inmate   on   this  _____   day   of  _____20___  ,   at
      time)_____(am/pm).

      _____        _____
      Signature/Serving Officer/Title          Inmate's Signature/AIS Number

                                                              Annex C to AR 403 (Page

AR 403 January 30, 2003

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT (OPTIONAL)

Inmate   Name/AIS   Number _____       Incident    Report
No._____

Facility

—

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING
OFFICER         (QBHO)         TO         ARRESTING         OFFICER:

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO)
TO                                                              INMATE:

CONTINUED         WITNESS         TESTIMONY         (QBHO):

AR 403 January 30, 2003

CONTINUED                    FINDINGS                    OF                              FACT:

AR 403 January 30, 2003

CONTINUED          BASIS          FOR          FINDINGS          OF          FACT:

_____
_____

_____
_____

_____
_____

_____
_____

CONTINUED          HEARING          OFFICER'S          RECOMMENDATIONS:

_____
_____

_____
_____

_____
_____

_____
_____

OTHER:

_____
___

_____
_____

_____
_____

_____
_____

_____
_____

AR 403 January 30, 2003

Annex C to AR 403 (Page 5 of 5)

ALDOC Form 225D

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's     Name _____     AIS     #

Violation(s)
_____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has
been                                                   rescheduled                                          for
_____

Reason                                  for                                        rescheduling:
_____
_____
_____

_____          _____
Inmate's Signature                    Serving Officer's Signature

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's Name _____ AIS _____

Violation (s) _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been
rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                    Serving Officer's Signature

Annex D to AR 403

26 of 26

AR 403 January 30, 2003



STATE OF ALABAMA

## DEPARTMENT OF CORRECTIONS

Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

July 25, 2003

TO:  WARDENS
     HEADS OF STAFF AGENCIES
     DIVISION HEADS
     ADMINISTRATIVE REGULATION MONITORS

CHANGE #1
ADMINISTRATIVE REGULATION 403

**DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS**

PURPOSE:  To include contract security employees who will be serving in the same capacities as ALDOC employees.

CHANGES TO BE MADE:

| Reference | Action Required |
|---|---|
| Section IA | Change the second sentence to read: "The Commissioner, or designee(s), Wardens, ALDOC employees and contract employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation." |
| Section IIIA | Change the first sentence to read: "The arrest or charge of an inmate for a rule violation may be made by any employee or contract employee of the ALDOC." |
| Section IIIB | Change the first sentence to read: "Wardens will appoint an ALDOC employee, or contracted employee, to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403." |

Section IVC                     Change the fourth sentence to read:
                                "If the inmate is not capable of acting in his/her own defense, the appoint an
                                on-duty ALDOC employee, or contracted employee, to assist the inmate."

File this numbered change at the back of the regulation after annotating both the index and the regulation to indicate the required changes have been completed. Advise all personnel in your organization of the change to this regulation.

Donal Campbell, Commissioner